Jesus Martinez GAMEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–81–00287–CR.

Court of Appeals of Texas,
San Antonio.

Nov. 2, 1983.

Discretionary Review Granted
March 28, 1984.

David Chapman, San Antonio, for appellant.

Bill White, James L. Bruner, San Antonio, for appellee.

Before BUTTS, REEVES and DIAL, JJ.

## OPINION

REEVES, Justice.

Appellant, Jesus Martinez Gamez, was convicted of the capital murder of Joe Banda. He was assessed punishment at life imprisonment. We affirm.

Appellant's first four grounds of error complain that a witness for the State, Richard Sanchez, was an accomplice as a matter of law; that the court erred in submitting Sanchez's status as an accomplice to the jury as a question of fact; that the evidence is insufficient to corroborate the testimony of Sanchez, and; that the evidence is insufficient to corroborate the testimony of Frank San Miguel, a State's witness and an accomplice as a matter of law.

Appellant was indicted for employing Guadalupe Castro, for remuneration in the amount of one thousand dollars ($1,000.00) to kill the decedent, Joe Banda. TEX.PENAL CODE ANN. § 19.03(a)(3) (Vernon 1974). Frank San Miguel, who was held to be an accomplice as a matter of law by the trial court, testified that appellant telephoned him in December, 1978, and asked if he could find someone who was willing to kill an individual for one thousand dollars. San Miguel, as a result of this phone call, arranged a meeting between Guadalupe Castro and appellant. At this meeting it was decided that the decedent would be killed by placing dynamite in his car. San Miguel was given three hundred dollars ($300) to purchase the dynamite. Twenty-five dollars went to the actual purchase of the dynamite. San Miguel gave eighty dollars to Castro and kept the balance for himself.

Richard Sanchez testified that he had met Castro in 1977. Sanchez and Castro lived together and both worked at a fireworks stand which was managed by San Miguel. Sanchez stated that he knew appellant hired Castro to kill the decedent; that the price was one thousand dollars, and that three hundred dollars had been paid. Sanchez testified Castro offered him one hundred dollars to help kill Banda which he refused. Despite the refusal of the one hundred dollars, Sanchez watched while San Miguel instructed Castro how to connect the dynamite and allowed his car to be used for this practice session. That evening Sanchez, knowing Castro was going to plant the dynamite to kill Banda, drove Castro to Banda's residence. Neither Castro nor Sanchez could open the hood of Banda's car. They then left and returned some four hours later after having learned how to open the hood. On this trip, Sanchez waited in the car while Castro planted the dynamite.

The next morning Banda started his car. The dynamite exploded destroying the car. Banda, however, was only slightly injured. Castro and Sanchez learned of the failure the next day at work. Sanchez testified

**126**

appellant arrived at the fireworks stand and had a discussion with Castro in appellant's car. Castro emerged from the car with a newspaper which showed Banda was still alive. Castro told Sanchez he was going to finish the job by shooting Banda, and asked for Sanchez's help. Sanchez declined.

After the bomb attempt on Banda's life failed, Banda moved from his home to a motel. Sanchez testified that Castro learned of Banda's new location from appellant a couple of days after the bombing. Sanchez was again asked to accompany Castro and again refused. When Castro left to do the shooting, Sanchez wished him "good luck."

Castro was successful on this trip. Banda was shot nine times with a .22 caliber rifle and died as a result of multiple gunshot wounds.

Some six to seven hours after the shooting, Sanchez saw appellant pay Castro the seven hundred dollar balance due, and was shown Banda's wallet and nine spent shell casings by Castro.

■ One is not an accomplice witness who cannot be prosecuted for the offense for which the accused is charged. *May v. State,* 618 S.W.2d 333, 340 (Tex.Cr.App. 1981), *vacated,* 454 U.S. 959, 102 S.Ct. 497, 70 L.Ed.2d 374 (1981), *aff'd on remand,* 632 S.W.2d 751 (Tex.Cr.App.1982). There is no evidence that Sanchez was involved in the negotiations and the agreement between Castro, San Miguel, and appellant. Further, the evidence is uncontroverted that Sanchez received no remuneration, was not present at the shooting, and did not participate in the shooting in any way. While it is true that Sanchez knew of the contract to kill Banda; knew the details of the contract with particularity; assisted in an unsuccessful attempt on Banda's life; and made no effort to contact the authorities, we cannot say that Sanchez was an accomplice witness as a matter of law. "Where there is doubt whether a witness is an accomplice, submitting the issue to the jury is sufficient even though the evidence preponderates in favor of the conclusion

that the witness is an accomplice as a matter of law." *May, supra* at 339–40. There was no error in submitting the issue of whether Sanchez was an accomplice to the jury. Appellant's first two grounds of error are overruled.

■ The trial court held that Frank San Miguel was an accomplice as a matter of law. TEX.CODE CRIM.PROC.ANN. art. 38.14 (Vernon 1979) provides: "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." Since the jury found that Sanchez was not an accomplice, and we have held he is not an accomplice as a matter of law, his testimony may be used to corroborate the testimony of San Miguel. We hold there is sufficient evidence to corroborate San Miguel's testimony more likely than not. Further, since Sanchez was not an accomplice his testimony needed no corroboration. Appellant's third and fourth grounds of error are overruled.

■ Appellant's fifth ground of error contends the State "over indicted" him and then failed to prove all the allegations in the indictment. The pertinent part of the indictment states:

JESUS MARTINEZ GAMEZ did then and there knowingly and intentionally CAUSE THE DEATH OF JOE BANDA HEREINAFTER CALLED COMPLAINANT, BY SHOOTING THE SAID COMPLAINANT WITH A GUN *AND* THE SAID JESUS MARTINEZ GAMEZ DID THEN AND THERE KNOWINGLY AND INTENTIONALLY EMPLOY GUADALUPE CASTRO FOR REMUNERATION AND PROMISE OF REMUNERATION, TO-WIT: THE SUM OF ONE THOUSAND DOLLARS ($1,000.00) PAID AND PROMISED TO BE PAID TO GUADALUPE CASTRO TO KILL THE SAID COMPLAINANT BY SHOOTING THE SAID COMPLAIN-

ANT WITH A GUN.... (emphasis ours).

Appellant contends that by the use of the conjunctive "and," the State must prove that appellant personally shot the deceased. We disagree.

TEX.PENAL CODE ANN. § 19.03(a) (Vernon 1974), which defines capital murder, states: "A person commits an offense if he commits murder as defined under section 19.02(a)(1) of this code...." This section goes on to enumerate five instances which raise the offense of murder to capital murder. Section 19.02(a)(1) defines murder as intentionally and knowingly causing the death of an individual.

What the indictment before us does is charge appellant with murder and also alleges an additional fact, employing another to commit murder for remuneration, so that the indictment, when viewed in its entirety, charges capital murder.

■ The trial court's charge to the jury correctly included the law of parties, *English v. State*, 592 S.W.2d 949 (Tex.Cr.App. 1980), *cert. denied*, 449 U.S. 891, 101 S.Ct. 254, 66 L.Ed.2d 120 (1980); TEX.PENAL CODE ANN. §§ 7.01, 7.02 (Vernon 1974). The proof at trial showed that appellant hired Castro to murder the deceased and that Castro did in fact shoot the deceased with a gun. A court may charge the jury on the law of parties even though there is no such allegation in the indictment. *English, supra* at 955; *Pitts v. State*, 569 S.W.2d 898, 900 (Tex.Cr.App.1978). While appellant did not pull the trigger himself, clearly he is guilty of murder under the law of parties. TEX.PENAL CODE ANN. §§ 7.01, 7.02 (Vernon 1974). Further, because of the proof of the murder contract and the payment of money, appellant is also guilty of capital murder. TEX.PENAL CODE ANN. § 19.03(a)(3) (Vernon 1974). The use of the conjunctive in the indictment together with the charge on parties does not increase the State's proof as contended by appellant. We hold there is no variance between the indictment and the proof at trial and overrule appellant's fifth ground of error.

Appellant, in his final ground of error, contends the trial judge was disqualified from presiding because he had served as counsel for the State. This court, by an opinion dated December 8, 1982, abated this appeal for an evidentiary hearing to determine whether the trial judge, the Honorable Roy R. Barrera, Jr., participated in the preparation and investigation of this case when he was an assistant district attorney for Bexar County. *Gamez v. State*, 644 S.W.2d 879 (Tex.App.—San Antonio 1983, pet. ref'd).

TEX. CONST. art. V § 11, provides in part: "No judge shall sit in any case ... when he shall have been counsel in the case." Further, TEX.CODE CRIM.PROC. ANN. art. 30.01 (Vernon 1966), states: "No judge or justice of the peace shall sit in any case where ... he has been of counsel for the State ...."

■ The issue of Judge Barrera's status in the case before us arises from the stamped signature of the judge, who at the time his signature was affixed was an assistant district attorney, to the State's announcement of ready. *See Gamez, supra* at 980. At the evidentiary hearing the judge testified to the following facts:

(1) arraignments for all district courts were held in one court;

(2) this procedure could involve in excess of one hundred cases;

(3) the handwritten name of Jesus Gamez on the announcement of ready was not Judge Barrera's handwriting;

(4) the signature stamp was Judge Barrera's;

(5) Judge Barrera had never examined the State's file, and;

(6) the judge had absolutely no recollection of the case.

Judge Barrera explained that the most probable way by which his signature stamp was used in the instant case was by his helping stamp his signature to the State's announcement of ready forms for the prosecutor who was handling arraignments on that particular day. Judge Barrera, on

cross-examination, stated, "What would have happened was I would have gone into the office, there would have been a stack of announcements of ready already prepared by whoever prepared that document ... And that person would have said, 'These are the cases the State is ready on. Help me sign them.'"

We are of the opinion that this merely perfunctory act of Judge Barrera standing alone is not enough to bring the judge within the ambits of either the Constitution's or Code of Criminal Procedure's restrictions. *Lee v. State*, 555 S.W.2d 121, 122 (Tex.Cr.App.1977). Appellant's sixth ground of error is overruled and the judgment of the trial court is affirmed.

BUTTS, Justice, dissenting.

I respectfully dissent, believing as stated in the dissenting opinion of this case at 644 S.W.2d 879, 881 that the trial judge was disqualified to conduct the trial by reason of article V, § 11 of the Texas Constitution and article 31.01 of the Texas Code of Criminal Procedure. The announcement of "ready" in the pleading foreclosed a possible defense, regardless whether a stamped or handwritten signature of a State's attorney was employed. The State relied upon the pleading to forestall any defense that the State was not ready for trial whether or not an assembly line method of stamping official prosecuting attorneys' signatures to several pleadings produced this result.

I incorporate the dissent at 881 of the earlier opinion. In *Lee v. State*, 555 S.W.2d 121 (Tex.Cr.App.1977) that judge, as a former prosecuting attorney, wrote a letter to defense counsel relative to a possible plea; he had no personal knowledge of the case but relied upon another State attorney's assessment of the case. The Court of Criminal Appeals determined he had been counsel for the State at that time and, therefore, was disqualified from serving as trial judge in the case. A *pleading* which becomes part of the case conveys more meaning than a mere *letter* ancillary to a proceedings. To rely upon a pleading

first as an affirmative showing of a required position at trial and later, to minimize its significance because there is a *stamped* signature should not be an approved part of the criminal jurisprudence of this State. For these reasons and those previously stated, I dissent.