**Jesus Martinez GAMEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 015–84.**

Court of Criminal Appeals of Texas.

Sept. 23, 1987.

Manuel V. Lopez, Eduardo Saenz, San Antonio, for appellant.

Sam D. Millsap, Jr., Dist. Atty., and Edward F. Shaughnessy, III, Asst. Dist. Atty., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant was convicted of the capital murder of Joe Banda. The jury having answered the second special issue submitted under Article 37.071, V.A.C.C.P., in the negative the punishment was assessed at life imprisonment.

On appeal by virtue of a supplemental ground of error (now point) appellant contended that the trial judge was absolutely disqualified from presiding on the trial because he had served as counsel for the State in the case. Article V, § 11, Tex. Const.; Article 30.01, V.A.C.C.P. The Court of Appeals abated the appeal for an evidentiary hearing to determine whether the trial judge, the Honorable Roy R. Barrera, Jr., participated in the preparation and investigation of the case while he was an Assistant Criminal District Attorney for Bexar County. *Gamez v. State*, 644 S.W.2d 879 (Tex.App.-San Antonio 1983, pet. ref'd). Following such evidentiary hearing the Court of Appeals affirmed the conviction finding, inter alia, that Judge Barrera was not disqualified.[1] It further found that State's witness, Richard Sanchez, was not an accomplice witness as a matter of law and that the evidence was sufficient to sustain the conviction. *Gamez v. State*, 665 S.W.2d 124 (Tex.App.-San Antonio 1983). We granted appellant's petition for discretionary review to determine the correctness of the decision below.[2]

---

1. Justice Butts dissented to the panel opinion on this issue alone.

2. See Tex.R.App.Pro., Rule 200(c)(5) and (c)(4). Further, the character of reasons set forth in said Rule 200 are "neither controlling" nor fully measure the Court of Criminal Appeals' discretion.

It does not appear that the qualification of Judge Barrera was challenged at trial. It was raised for the first time on appeal. At the evidentiary hearing ordered by the Court of Appeals and presided over by Judge James Barlow, it was established that the State's written announcement of ready in the instant cause in the 144th District Court and dated March 23, 1979, was signed with the signature stamp of Roy R. Barrera, Jr., Assistant Criminal District Attorney. Judge Barrera testified that in March 1979 he was the third chair prosecutor in the 175th District Court, and that he was never a felony prosecutor in any other court. Judge Barrera testified he did not present the instant case to the grand jury, did not participate in any examining trial, did not conduct a field investigation, did not interview witnesses and did not prepare legal research in the case, did not ever examine the State's file, made no court appearance in the 144th District Court in this cause [3] or any other cause. When shown a copy of the State's announcement of ready he stated the handwriting on the document including the words "Jesus Gamez" was not his, and that he did not prepare the document and did not personally sign it though the document bore his stamped signature. He explained at that time one of the district courts trying criminal cases in Bexar County would hold "arraignments for all other courts," "probably in excess of one hundred cases." He further explained that the third chair prosecutor in the district court conducting the arraignments was responsible for preparing the State's announcements of ready in all of the cases, that other prosecutors would often assist the said third chair prosecutor by writing in cause numbers, the style of cases and signing such documents. Judge Barrera related that on occasion, while an Assistant Criminal District Attorney, he had been requested to help with such documents.[4] He had no independent recollection of ever seeing the document in question, and while he may have "stamped that document," someone else may have "stamped that for me or used my stamp."

Judge Barrera testified he became Judge of the 144th District court on October 22, 1980, more than a year and a half after the State's announcement of ready was filed.

Susan Reed,[5] who prosecuted the instant case, had no recollection of Judge Barrera participating in the case while he was a prosecutor and while she was connected with the case.

Article V, § 11, Texas State Constitution, in part provides:

"Sec. 11. No judge shall sit in any case ... when he shall have been counsel in the case...."

Article 30.01, V.A.C.C.P., provides in part:

"No judge or justice of the peace shall sit in any case ... where he has been of counsel for the State or the accused...."

These provisions have been held to be mandatory. *Hathorne v. State*, 459 S.W.2d 826 (Tex.Cr.App.1970), cert. den. 402 U.S. 914, 91 S.Ct. 1398, 28 L.Ed.2d 657 (1971); *Ex parte Miller*, 696 S.W.2d 908 (Tex.Cr.App.1985).

It is not necessary that an objection be made. *Holifield v. State*, 538 S.W.2d 123 (Tex.Cr.App.1976). The disqualification of a judge may not be waived even by consent of the parties. Tex.Jur.3d, Vol. 21, Crim.Law, § 1861, p. 772. The issue may be raised at any time. See *Ex parte Miller*, 696 S.W.2d 908, 910 (Tex.Cr. App.1985); *Lee v. State*, 555 S.W.2d 121, 122 (Tex.Cr.App.1977); *Woodland v. State*, 147 Tex.Cr.R. 84, 178 S.W.2d 528 (Tex.Cr. App.1944).

Under these provisions "... a judge is clearly disqualified if he has acted as coun-

---

**3.** Judge Barrera explained that at the time all capital murder cases such as the instant case were handled by the Capital Crimes Section of the District Attorney's office and he was not a member of that section.

**4.** "What would have happened was I would have gone into the office, there would be a stack of announcements of ready already prepared by whoever prepared that document ... and that person would have said, 'These are the cases the State is ready on. Help me sign them.'"

**5.** Reed is now Judge, 144th District Court.

sel in the trial of the defendant for the identical offense, or if, as prosecuting attorney, he actively participated in the preparation of the case against the defendant. But the mere fact that a judge was district attorney at the time of the offense or at the time that the accused was examined or indicted does not work a disqualification if, when district attorney, he had nothing to do with the prosecution." Tex.Jur.3d, Vol. 21, Crim.Law, § 1858, pp. 766, 767, and cases there cited.

■ As pointed out in *Holifield v. State*, supra, the prohibition in the Texas Constitution and Article 30.01, V.A.C.C.P., against a judge hearing a case in which he has acted as counsel requires that he *actually have participated in the very. case* which is before him.[6]

In *Muro v. State*, 387 S.W.2d 674 (Tex. Cr.App.1965), it was held the trial judge in a prosecution for assault with intent to murder was not disqualified because he had been assistant district attorney at the time of the offense where the case did not come within the purview of his assignment as Assistant Criminal District Attorney, and he had no recollection of the case. See also *Donald v. State*, 453 S.W.2d 825, 826 (Tex.Cr.App.1969), citing *Muro* with approval.

In *Rodriguez v. State*, 489 S.W.2d 121, 123 (Tex.Cr.App.1972), this Court wrote:

"It is not shown that the trial judge, even though he was the First Assistant to the Criminal District Attorney and in charge of capital prosecutions, actually investigated, advised, or participated in this case in any way, it is therefore not shown that he 'acted as counsel in the case' as contemplated by the constitutional and statutory provision relied upon. See *Utzman v. State*, 32 Tex. Cr.R. 426, 24 S.W. 412 (1893); *Muro v. State*, 387 S.W.2d 674 (Tex.Cr.App.1965)

and cf. *Ex parte McDonald*, 469 S.W.2d 173 (Tex.Cr.App.1971), and *Hathorne v. State*, 459 S.W.2d 826 (Tex.Cr.App. 1970)." See also *Prince v. State*, [158 Tex.Cr.R. 65] 252 S.W.2d 945 (Tex.Cr. App.1952).

In *Ex parte Miller*, supra, the Court observed that *Hathorne*, supra, had construed "counsel in the case" to require an affirmative showing that the judge actually acted as counsel in the very case before him and that *Rodriguez* and *Carter v. State*, 496 S.W.2d 603 (Tex.Cr.App.1973), had followed the *Hathorne* interpretation.

■ In line with the above cases Judge Barrera, in the instant case, would not be disqualified unless the State's announcement of ready constituted him "counsel in the case." The judge testified that while an Assistant Criminal District Attorney he and other assistants on occasion were asked to assist the third chair prosecutor in the court conducting the arraignment docket for the district courts trying criminal cases by preparing written announcements of ready for the State in cases often exceeding one hundred in number. The particular announcement of ready in question was on a printed form. The blanks in the form concerning appellant's name, the date, the cause number and the court number were filled in by handwriting which was not that of Judge Barrera but it was signed with his stamped signature. The judge stated he did not prepare or personally sign the document and had no recollection of stamping the same; that someone may have "stamped that for me or used my stamp." Judge Barrera's lack of participation in the case has been detailed.

We agree with the Court of Appeals that the possible perfunctory act of Judge Barrera standing alone would not constitute him "counsel in the case" as contemplated

---

**6.** A judge is not disqualified from sitting because he was counsel in other prosecutions against the accused, even if those prosecutions resulted in convictions which are alleged in the indictment for the purpose of enhancement of punishment in the event of conviction of the primary offense. *Hathorne v. State*, 459 S.W.2d 826 (Tex.Cr.App.1970), cert. den. 402 U.S. 914, 91 S.Ct. 1398, 28 L.Ed.2d 657 (1971) (overruling earlier cases to the contrary, see also *Griffin v. State*, 487 S.W.2d 81 (Tex.Cr.App.1972); *Nichols v. State*, 494 S.W.2d 830 (Tex.Cr.App.1973); *Morgan v. State*, 503 S.W.2d 770 (Tex.Cr.App. 1974).)

by either the constitutional or statutory provision.[7] The ground of review is overruled.[8]

Appellant's second ground of review relates to the charge of the court and the sufficiency of the evidence. He contends the Court of Appeals erred in overruling his points (nee grounds) of error complaining that Richard Sanchez was an accomplice witness as a matter of law; that the court erred in submitting to the jury as an issue of fact the question of whether Sanchez was an accomplice witness; that the evidence was insufficient to corroborate the testimony of Sanchez and that the evidence was insufficient to corroborate the testimony of Frank San Miguel, whom the court charged was an accomplice witness as a matter of law.

**7.** Justice Butts in her dissent stated:

"The announcement of 'ready' in the pleading forclosed a possible *defense*, regardless whether a stamped or handwritten signature of a State's Attorney was employed. The State relied upon the pleading to forstall any *defense* that the State was not ready for trial whether or not an assembly line method of stamping official prosecuting attorneys' signatures to several pleadings produced this result." (Emphasis supplied.)

Justice Butts then relied upon *Lee v. State,* 555 S.W.2d 121 (Tex.Cr.App.1977), comparing the letter in that case to the "pleading" in this case.

It should be noted that the above comments relate obviously to the Texas Speedy Trial Act (Article 32A.02, V.A.C.C.P.). A defendant rather than the State must make the first move in regards to a statutory speedy trial question claim, and, if he does not do so, the defendant waives his rights under the Speedy Trial Act, and the State is not required to show readiness in compliance with the Act's requirements. *Barfield v. State,* 586 S.W.2d 538 (Tex.Cr.App. 1979). Once a defendant files his motion to dismiss an indictment for failure to comply with the Speedy Trial Act, then the State must declare its readiness for trial then and at times required by the Act. *Barfield v. State,* supra. A declaration by the State of its readiness for trial is merely a prima facie showing of compliance with the Speedy Trial Act that can be rebutted by evidence submitted by the defendant demonstrating that the State was not ready. *Barfield v. State,* supra. It is difficult to say that the State's announcement of "ready" in the instant case forclosed a "defense" as that term is usually used. There is no showing in the instant case that the appellant ever attempted to utilize the Speedy Trial Act.

Further, that Act has now been declared unconstitutional. *Meshell v. State,* —— S.W.2d —— (Tex.Cr.App. No. 1339–85, July 1, 1987).

The capital murder indictment alleged that appellant Gamez did knowingly and intentionally cause the death of Joe Banda by shooting him with a gun on or about January 2, 1979, by employing Guadalupe Castro for remuneration in the amount of $1,000 to kill Banda by shooting him with a gun.

The facts were well summarized by the Court of Appeals as follows:

"... Frank San Miguel, who was held to be an accomplice as a matter of law by the trial court, testified that appellant telephoned him in December, 1978, and asked if he could find someone who was willing to kill an individual for one thousand dollars. San Miguel, as a result of this phone call, arranged a meeting between Guadalupe Castro and appellant.

*Lee,* supra, is distinguishable on the facts. There the judge was the former assistant district attorney who was Chief of the Trial Division and who reviewed the file in the particular case, found the defendant's record deplorable and refused in a letter to defense counsel to make a recommendation less than life imprisonment. None of these facts are present in the instant case.

**8.** We are aware of the decision in *Bradshaw v. McCotter,* 796 F.2d 100 (5th Cir.1986), which modified the earlier decision, 785 F.2d 1327. Originally the Court held that it was a violation of the due process clause of the Fourteenth Amendment for a judge of this Court not to have disqualified himself where he had been the State's Prosecuting Attorney at the time of petitioner's conviction and his name appeared on the State's appellate brief even though he did not actually participate in the prosecution and did not prepare the brief or give any advice in connection therewith and his name was added to the brief solely as a matter of courtesy by the local prosecutor who had prepared the brief. Federal habeas corpus relief was ordered. On rehearing the Court denied habeas corpus relief holding that no constitutional violation was shown absent a showing that Judge Vollers' vote was controlling. Judge Gee concurred and noted, "In this case, there is not even a claim that Judge Vollers had anything to do with resisting Bradshaw's appeal, only that an uninformed observer might believe that he did." The original decision in *Bradshaw* was on a different basis than that urged in the present case, and is a tenuous decision at best. It is not authoritative and certainly not persuasive to those familiar with the protocol involved.

At this meeting it was decided that the decedent would be killed by placing dynamite in his car. San Miguel was given three hundred dollars ($300) to purchase the dynamite. Twenty-five dollars went to the actual purchase of the dynamite. San Miguel gave eighty dollars to Castro and kept the balance for himself.

"Richard Sanchez testified that he met Castro in 1977. Sanchez and Castro lived together and both worked at a fireworks stand which was managed by San Miguel. Sanchez stated that he knew appellant hired Castro to kill the decedent; that the price was one thousand dollars, and that three hundred dollars had been paid. Sanchez testified Castro offered him one hundred dollars to help kill Banda which he refused. Despite the refusal of the one hundred dollars, Sanchez watched while San Miguel instructed Castro how to connect the dynamite and allowed his car to be used for this practice session. That evening Sanchez, knowing Castro was going to plant the dynamite to kill Banda, drove Castro to Banda's residence. Neither Castro nor Sanchez could open the hood of Banda's car. They then left and returned some four hours later after having learned how to open the hood. On this trip, Sanchez waited in the car while Castro planted the dynamite.

"The next morning Banda started his car. The dynamite exploded destroying the car. Banda, however, was only slightly injured. Castro and Sanchez learned of the failure the next day at work. Sanchez testified appellant arrived at the fireworks stand and had a discussion with Castro in appellant's car. Castro emerged from the car with a newspaper which showed Banda was still alive. Castro told Sanchez he was going to finish the job by shooting Banda, and asked for Sanchez's help. Sanchez declined.

"After the bomb attempt on Banda's life failed, Banda moved from his home to a motel. Sanchez testified that Castro learned of Banda's new location from appellant a couple of days after the bombing. Sanchez was again asked to accompany Castro and again refused. When Castro left to do the shooting, Sanchez wished him 'good luck.'

"Castro was successful on this trip. Banda was shot nine times with a .22 caliber rifle and died as a result of multiple gunshot wounds.

"Some six to seven hours after the shooting, Sanchez saw appellant pay Castro the seven hundred dollar balance due, and was shown Banda's wallet and nine spent shell casings by Castro."

San Antonio Police Officers Silber and Ellis testified only about the antecedent assault (by dynamite) upon the deceased Banda. Dr. Nina Hollander, the medical examiner, testified only as to the cause and manner of death by gunshot wounds caused by a .22 caliber weapon. Officer Pena testified he received State's Exhibit No. 11, a .22 caliber Glenfield rifle from a confidential informant. Officer Stingle testified the bullets removed from the body of the deceased were consistent with having come out of the barrel of a gun like State's Exhibit No. 11. John Chapa Garcia admitted knowing San Miguel and Sanchez, but refused to testify as to any material issues. Officer Michalec testified Garcia provided him with information about the murder alleged which led him to arrest Guadalupe Castro. After Castro gave a confession, Michalec testified that appellant Gamez became a suspect. Michalec testified his investigation revealed that Eleverta Hernandez, who was a friend of both the appellant and the deceased, helped the deceased to check into the motel where his body was later found by the officers.

The court in its charge to the jurors instructed them that Frank San Miguel was an accomplice witness as a matter of law. The court, however, submitted the question of whether Richard Sanchez was an accomplice witness to the jury or a fact issue, and carefully instructed the jury that one accomplice witness cannot corroborate another accomplice witness.

The jury found the defendant guilty.

Article 38.14, V.A.C.C.P., provides:

"A conviction cannot be had upon the testimony of an accomplice witness unless that testimony is corroborated by other evidence tending to connect the defendant with the offense committed, and the corroboration is not sufficient if it merely shows the commission of the offense."

It has been said before and after the adoption of the 1974 Penal Code that an accomplice witness is someone who participated with another before, during or after the commission of a crime. *Brooks v. State*, 686 S.W.2d 952, 957 (Tex.Cr.App. 1985); *Harris v. State*, 645 S.W.2d 447 (Tex.Cr.App.1983); *May v. State*, 618 S.W.2d 333 (Tex.Cr.App.1981); *Russell v. State*, 598 S.W.2d 238 (Tex.Cr.App.1980), and cases there cited; *Easter v. State*, 536 S.W.2d 223, 226 (Tex.Cr.App.1976); *Singletary v. State*, 509 S.W.2d 572 (Tex.Cr.App. 1974).

One is not an accomplice witness, however, who cannot be prosecuted for the offense with which the accused is charged. *Villarreal v. State*, 576 S.W.2d 51 (Tex.Cr. App.1979); *Ferguson v. State*, 573 S.W.2d 516 (Tex.Cr.App.1978); *Russell v. State*, supra; *Brooks v. State*, supra. Thus the test to be applied is whether a prosecution will be against the individual under the indictment by which the accused was charged. *Carrillo v. State*, 591 S.W.2d 876 (Tex.Cr.App.1979); *May v. State*, supra. See also *Villarreal v. State*, supra.

If a State's witness has no complicity in the offense for which an accused is on trial, his or her testimony is not that of an accomplice witness whatever may have been his complicity with the accused in the commission of other offenses. *Washburn v. State*, 167 Tex.Cr.R. 125, 318 S.W.2d 627 (Tex.Cr.App.1958), cert. den. 359 U.S. 965, 79 S.Ct. 876, 3 L.Ed.2d 834 (1959); *McClanahan v. State*, 394 S.W.2d 499 (Tex.Cr. App.1965); *Johnston v. State*, 418 S.W.2d 522 (Tex.Cr.App.1967); *Eremita v. State*, 420 S.W.2d 609 (Tex.Cr.App.1967); *Easter v. State*, supra, at p. 225; *Caraway v. State*, 550 S.W.2d 699 (Tex.Cr.App.1977); *Carrillo v. State*, supra; *Brooks v. State*, supra; *Singletary v. State*, supra.

The mere fact that a witness was present when the crime was committed does not compel the conclusion the witness is an accomplice witness. *Brooks v. State*, supra; *Brown v. State*, 640 S.W.2d 275 (Tex.Cr.App.1982); *Arney v. State*, 580 S.W.2d 836 (Tex.Cr.App.1979); *Easter v. State*, supra, at p. 225. Further, a witness is not deemed an accomplice witness because he knew of the crime but failed to disclose it or even concealed it. *Easter v. State*, supra, at p. 225; *Carrillo v. State*, supra. See also *Villarreal v. State*, supra; *Russell v. State*, supra. See also *Wade v. State*, 367 S.W.2d 337 (Tex.Cr.App.1963); *Walker v. State*, 149 Tex.Cr.R. 501, 196 S.W.2d 515 (Tex.Cr.App.1946); *Herndon v. State*, 82 Tex.Cr.R. 232, 198 S.W. 788 (Tex. Cr.App.1917).

The evidence in a case determines what jury instruction needs to be given on an accomplice witness. When the evidence clearly shows the witness is an accomplice witness as a matter of law, the trial court must so instruct the jury. *Harris v. State*, supra at p. 454; *Arney v. State*, supra, at p. 836; *Allen v. State*, 461 S.W.2d 622 (Tex.Cr.App.1970). When there is a question from the evidence whether a witness is an accomplice witness, it is then proper to submit that fact issue to the jury, and this is sufficient even though the evidence appears to preponderate in favor of the conclusion that the witness is an accomplice witness as a matter of law. *Harris v. State*, supra, at p. 454; *Brown v. State*, supra; *May v. State*, supra; *Colunga v. State*, 527 S.W.2d 285 (Tex.Cr.App.1975); *Gonzales v. State*, 441 S.W.2d 539 (Tex.Cr. App.1969), and cases there cited. See also *Caraway v. State*, 550 S.W.2d 699 (Tex.Cr. App.1977); *Ward v. State*, 520 S.W.2d 395 (Tex.Cr.App.1975). If the evidence is clear that the witness is not an accomplice witness, no charge need be given to the jury either that the witness is an accomplice witness as a matter of law or in the form of a fact issue whether the witness is an accomplice witness. *Villarreal v. State*, supra, at p. 51; *Harris v. State*, supra, at p. 456.

■ Appellant contends the evidence shows Sanchez was an accomplice witness as a matter of law. We do not agree. Sanchez, under the facts, could not be prosecuted for the offense for which the accused was charged. Whatever Sanchez's complicity with Castro or the appellant's in the bomb attempt on the life of Banda, he was not involved in the planning or execution of the killing of Banda by shooting him with a gun as charged in the indictment. He declined to become involved and was not present.[9] The fact that Sanchez knew of the crime and did not disclose it would not constitute an accomplice witness as the earlier cited authorities indicate.

The careful trial judge decided to submit to the jury the fact issue of whether Sanchez was an accomplice witness which is proper when there is some question or doubt whether the witness is an accomplice witness. We cannot say the trial court erred in submitting such fact issue to the jury. *May v. State*, supra, at 340; *Carrillo v. State*, supra; *Ward v. State*, 520 S.W.2d 395 (Tex.Cr.App.1975); *Zitterich v. State*, 502 S.W.2d 144 (Tex.Cr.App.1973). Further, the court instructed the jury that Frank San Miguel was an accomplice witness as a matter of law and instructed the jury that one accomplice witness cannot corroborate another accomplice witness. See *May v. State*, supra, at 339; *Caraway v. State*, supra; *Chapman v. State*, 470 S.W.2d 656 (Tex.Cr.App.1971).

■ In light of the evidence, the court's charge and jury's verdict at the guilt stage of the trial it is clear that the jury found that Sanchez was not an accomplice witness. See *May v. State*, supra, at 340. His testimony did not need to be corroborated, and his testimony was sufficient to corroborate Frank San Miguel's testimony.[10]

---

9. The direct examination of Sanchez reflects the following:

"Q. Okay, now did Guadalupe [Castro] try to get you to help him kill Joe Banda?
"A. Yes.
"Q. Okay, what did he offer you?
"A. He offered me a hundred dollars.
"Q. Okay. And what did you tell him?
"A. I said no.
"Q. Okay. Now, was that before the bombing or after the bombing?
"A. It was before."

After appellant met with Castro and advised him Banda survived the bomb attempt, Castro said he was going to shoot Banda. Thereafter the record reflects the following on interrogation of Sanchez:

"Q. Did he [Castro] ask you to go with him to shoot him?
"A. Yes.
"Q. And did you help him?
"A. No.
"Q. Did you help him shoot him in any manner?
"A. No.
     *   *   *   *   *   *
"Q. Okay, were you with him when he shot Joe Banda?
"A. No.
"Q. Did you help him plan going and killing Joe Banda?
"A. No. I had nothing to do with that.
"Q. Do you know if there was anyone with him when he went to kill Joe Banda?
"A. Yes, there was.
"Q. And who was that?
"A. Jesse DeLaRosa."

10. To test the sufficiency of the corroboration of an accomplice witness, one must eliminate from consideration the evidence of the accomplice witness and then examine the evidence of the other witnesses to ascertain if it is of incriminating character which tends to connect the defendant with the commission of the offense. If there is such evidence, the corroboration is sufficient; otherwise it is not. *Edwards v. State*, 427 S.W.2d 629, 632 (Tex.Cr.App.1968); *Carrillo v. State*, supra; *Brown v. State*, 561 S.W.2d 484 (Tex.Cr.App.1978); *Etheredge v. State*, 542 S.W.2d 148 (Tex.Cr.App.1976); *Reynolds v. State*, 489 S.W.2d 866 (Tex.Cr.App.1972). The corroboration testimony need not directly link the accused to the crime or be sufficient in itself to establish guilt. *Lyman v. State*, 540 S.W.2d 711 (Tex.Cr.App.1976); *Cherb v. State*, 472 S.W.2d 273 (Tex.Cr.App.1971); *May v. State*, supra.

San Miguel's testimony was corroborated by "other evidence tending to connect" appellant with the offense committed. Article 38.14, V.A.C.C.P. The Court of Appeals held "there was sufficient evidence to corroborate San Miguel's testimony [and make it] more likely than not." We disavow the "more likely than not" test mentioned in *Warren v. State*, 514 S.W.2d 458 (Tex.Cr.App.1974); *Bentley v. State*, 520 S.W.2d 390 (Tex.Cr.App.1975); *James v. State*, 538 S.W.2d 414 (Tex.Cr.App.1976); *May v. State*, supra, at 340. The only test is set forth in the statute (Article 38.14, supra), and these cases and all other cases espousing the "more likely than not" test are overruled to the extent of the conflict.

It must be presumed that the jury followed the court's charge and it is well established that evidence must be viewed in the light most favorable to the verdict. *Seaton v. State,* 564 S.W.2d 721 (Tex.Cr. App.1978); *Rogers v. State,* 550 S.W.2d 78 (Tex.Cr.App.1977); *Clark v. State,* 543 S.W.2d 125 (Tex.Cr.App.1976); *Jordan v. State,* 506 S.W.2d 217, 221 (Tex.Cr.App. 1974).

The ground of review as to the charge of the court and the sufficiency of the evidence to sustain the conviction is overruled.

The judgment of the Court of Appeals is affirmed.

WHITE, J., not participating.

CLINTON, Judge, dissenting and concurring.

The opinion of the Court states, "We granted appellant's petition for discretionary review to determine the correctness of the decision below." Maj. Opinion, at 317.

While that or a similar broad statement of a "reason" for granting review does appear from time to time in an opinion, this Court has declared to the bench and bar "the character of reasons" we will consider in determining whether to grant review. See Tex.R.App.Pro. Rule 200. That a decision of a court of appeals is said to be "incorrect" is not among them, and we have committed the Court to the proposition that a petition for discretionary review which does no more than complain about a claimed error on the part of a court of appeals is not likely to be a fit candidate for review. *Id.,* Rule 202(d)(5); *Degrate v. State,* 712 S.W.2d 755 (Tex.Cr.App.1986). Here there are apt specific reasons for review.

In the instant cause the opinions delivered in the San Antonio Court of Appeals are published, and there is a dissent to the majority opinion "upon a material question of law necessary to its decision"—indeed, one arising under our own Constitution and statute. Tex.R.App.Pro. Rule 200(c)(5). The issue is whether a constitutional command and statutory dictate that a judge shall not sit in any case wherein he has

been counsel for the State need not be obeyed if his act as counsel is "merely perfunctory." *Gamez v. State,* 665 S.W.2d 124, 128 (Tex.App.—San Antonio 1983). Now, a majority finds that his executing a protective written pleading for and on behalf of the State does not constitute an assistant district attorney "counsel in the case," and is not enough to show he did "actually participate" in the case.

So much for mandatory provisions that may not be waived by the parties. Maj. Opinion, at 318–319. To thus reducing their intended purpose and effect to an exercise in semantics, I respectfully dissent.

Furthermore, at the time this PDR was granted some members of the Court were concerned with an increasingly recurring statement of what we deemed to be an erroneous test for determining sufficiency of evidence to corroborate accomplice testimony that was utilized in the majority opinion below, *viz:*

"We hold there is sufficient evidence to corroborate San Miguel's testimony *more likely than not.*"

*Gamez v. State,* supra, at 126 (my emphasis here and throughout). After granting review in this cause but before deciding it, the occasion arose for this Court to disapprove a similar statement in an opinion by another court of appeals, *viz:*

"The corroborative evidence need not directly link the accused to the crime or be sufficient alone to establish guilt; *it need only make the accomplice testimony more likely to be true than not. Warren v. State,* 514 S.W.2d 458 (Tex. Cr.App.1974)."

*Vertz v. State,* 702 S.W.2d 196 (Tex.Cr. App.1986).

Again today the opinion of the Court disavows that "test." Maj. Opinion, at 323, n. 7. I join that part of the opinion.

TEAGUE, Judge, concurring and dissenting.

To this Court sustaining the San Antonio Court of Appeals' holding that Richard Sanchez was not an accomplice witness as

a matter of law, and that the evidence was sufficient to sustain appellant's conviction for the capital murder of Joe Banda, I concur. It is now obvious to me that this Court should not have granted appellant's petition for discretionary review on these issues.

I pause to point out that oftentimes the fact that at least four (4) members of this Court vote to grant a petition for discretionary review should never mean, in my view, that that decision is written in stone. We are human and, to err, is of course human. I confess: Many times I have voted to grant a petition for discretionary only because I felt at the time that sufficient study had not been made by this Court regarding the issue on which the party seeks review, but that later on more study might be devoted by this Court's members to the issue on which the petition was granted. However, later, after I have personally gone over the issue in more detail, or after another member of this Court has carefully gone over the issue in more detail, as Presiding Judge Onion, the author of the majority opinion, has most certainly done in this instance, sometimes it then becomes apparent or obvious to me that those of us who voted to grant the petition should have voted to refuse, rather than grant, the petition. In this instance, as to appellant's contentions that Sanchez was an accomplice witness as a matter of law and that the evidence was insufficient, I have now concluded that this Court should not have granted the appellant's petition to review the court of appeals' holdings on these contentions. Thus, I now vote to put the improvidently granted stamp to these contentions, and also would delete from the majority opinion everything that relates to them because, in all due respect to Presiding Judge Onion, the author, I do not find anything he states therein adds anything whatsoever to the jurisprudence of this State, and the facts of this case are not of such significance that they warrant a place in the lawbooks.

However, I do find that this Court acted quite properly when it originally granted appellant's petition to review the holding by the court of appeals that the trial judge

in this cause was not disqualified. See *Gamez v. State*, 665 S.W.2d 124 (Tex.App.–4th 1983). The majority opinion affirms this holding. I dissent because the case law in point will simply not support the holding that the trial judge in this cause was not disqualified.

Our Constitution provides in part, see Art. V, § 11, that "No judge shall sit in any case ... when he shall have been counsel in the case." Art. 30.01, V.A.C.C.P., states: "No judge or justice of the peace shall sit in any case where ... he has been of counsel for the State ..." These provisions have long been liberally construed by this Court. See the cases cited in *Lee v. State*, 555 S.W.2d 121 (Tex.Cr.App.1977). However, for reasons not reflected in the majority opinion, these provisions are now to be construed in the strictest fashion.

Given the facts of this case, I find that the "key" in deciding the issue, whether the trial judge in this cause was disqualified, is whether the record clearly reflects that he *participated* in the case as "counsel for the State." If he "participated" in the case, no matter how slight or perfunctory, he is then disqualified; if he did not "participate", then he was not disqualified.

One common definition for the word "participate" is to take part in something with others. See *Webster's Ninth New Collegiate Dictionary* 858 (1985 edition); *The American Heritage Dictionary of the English Language* 955 (1973 edition).

The appellate record of this cause reflects that all that Judge Barrera, the trial judge in this cause, did was to "probably" personally place his signature stamp on the State's announcement of ready forms for the prosecutor who was handling arraignments for the State on that particular day. Did this amount to him "participating" in the case? Of course it did, even though his "participation" was ever so slight and ever so perfunctory. See the San Antonio Court of Appeals original decision in this cause, in which it abated the cause to the trial court for a hearing on the issue. *Gamez v. State*, 644 S.W.2d 879 (Tex.App.–4th 1983). Justice Butts pointed out in the dissenting

opinion that she filed in that cause, "The announcement of 'ready' in the pleading foreclosed a possible defense [sic], regardless whether a stamped or handwritten signature of a State's attorney was employed. The State relied upon the pleading to forestall any defense [sic] that the State was not ready for trial whether or not an assembly line method of stamping official prosecuting attorneys' signatures to several pleading produced this result." (881). Also see Chapter 32, V.A.C.C.P., and this Court's decision of *Meshell v. State*, 739 S.W.2d 246 (Tex.Cr.App.1987, pending on rehearing), in which an aggressive and assertive majority of this Court on original submission held that the "Speedy Trial Act" was unconstitutional, on the most ludicrous of reasons, that it violated the separation of powers doctrine of our State Constitution. Nevertheless, at the time of appellant's trial, the Speedy Trial Act was alive, well, and breathing.

In the dissenting opinion that Justice Butts filed to the decision of the court of appeals to abate the cause to the trial court for a hearing, see 644 S.W.2d 879, she further pointed out the following:

> In the present case what the then assistant district attorney, now the trial judge, did was to sign his name in his official capacity as counsel for the State to a pleading. Whether he tried the case or participated at trial doesnot matter. The same is true of any assistant district attorney who signed the State's motions in the case but did not participate in the trial. Further, the fact that a 'stamp' of the State Attorney's signature may' have been used does not matter. This was a pleading upon which all parties in the case relied. The fact that the pleading was an announcement of the State that the State was 'ready' for trial in the case signifies that it was relied upon by the State to protect its position. Just as importantly the appellant could not raise the defense [sic] that the State was not ready for trial, which defense [sic] was now made automatically unavailable by the very pleading. (881).

When the case next reached the court of appeals, that Court overruled appellant's contention that Judge Barrera was disqualified, holding: "We are of the opinion that this merely perfunctory act of Judge Barrera standing alone is not enough to bring the judge within the ambits of either the Constitution's or Code of Criminal Procedure's restrictions. *Lee v. State*, 555 S.W.2d 121, 122 (Tex.Cr.App.1977)." (128). Given what this Court approved in *Lee*, supra, I find that the court of appeals' reliance upon that case as authority for its holding that Judge Barrera was not disqualified is sorely misplaced.

This Court's majority opinion in this cause merely cites, but does not discuss, *Lee*, supra, which I find, like Justice Butts of the courts of appeals did, as far as being factually in point, is the latest expression by this Court on the subject. This Court in *Lee*, supra, held that the issue was so serious that it did not even have to be raised on direct appeal. Given the facts and what this Court approved in *Lee*, supra, I am compelled to agree with Justice Butts' implicit finding that she made in both of her dissenting opinions that she filed in the court of appeals that although *Lee* is not a "white horse" case, it is to these eyes most certainly grayish in color, and should be discussed, and not merely cited in the majority opinion, and, of course, distinguished, which I find is impossible, and perhaps that is why it is not discussed in the majority opinion.

In *Lee*, supra, the record reflected that when the trial judge in that cause was an assistant district attorney, and while acting in his position as Chief of the Trial Division of the District Attorney's Office, he merely reviewed the file on the case and wrote defense counsel a letter informing him, inter alia, that, as Chief, he could not recommend to counsel anything less than life imprisonment for counsel's client, and advised defense counsel to get ready for trial. This Court held that these acts clearly constituted "participation" in that case and ruled that the trial judge was disqualified because of those acts of participation.

Given what this Court stated and held in *Lee*, supra, it should be obvious to almost anyone that under *Lee*, supra, Judge Barrera "participated" in this cause as "counsel for the State", even though such participation was ever so slight and ever so perfunctory. In *Lee*, supra, this Court held: "If the [trial judge] participated in any manner ... in the case when he was Assistant County [or District] Attorney, he would be counsel for the State", *Lee*, supra, at 125. Thus, given our facts, Judge Barrera was clearly disqualified from presiding over appellant's case.

Judge Barrera was also disqualified from sitting in this cause under *Bradshaw v. Mc Cotter*, 796 F.2d 100 (5th Cir.1986) and *Bradshaw v. Mc Cotter*, 785 F.2d 1327 (5th Cir.1986). On original submission, the Fifth Circuit was confronted with the issue whether, as a matter of federal constitutional law, Judge Vollers of this Court, who never in the technical sense "participated" in that case, but whose prior relationship to the case was only because his name and position of State's Attorney, which position he occupied before becoming a judge on this Court, had been placed on the brief that was filed by the local district attorney, was disqualified from sitting in that case solely and only for that reason. The Fifth Circuit, on original submission, not only found that Judge Vollers should have disqualified himself in that case, it is also held that there was no need on the part of the defendant to even show harm. On rehearing, the Court, after concluding that because Judge Vollers' vote in that case was not controlling, denied the defendant relief. However, the Court on rehearing made it expressly clear that it was not backing off on its finding that Judge Vollers should have disqualified himself in that case. Thus, contrary to what footnote 8 of this Court's majority opinion might insinuate, the Fifth Circuit did not modify its "conclusion in its original opinion that Judge Vollers should have disqualified himself in all cases in which his name appeared on the brief as a prosecutor." (101). Therefore, given the facts of *Bradshaw v. Mc Cotter*, supra, if Judge Vollers was not qualified to sit in that cause, then I do not understand how this Court can hold that Judge Barrera was qualified to sit in this cause, and what is stated in footnote 8 of the majority opinion is totally unpersuasive to show that Judge Barrera was not disqualified.

For the above and foregoing reasons, I respectfully dissent to the majority opinion's erroneous holding that Judge Barrera was not disqualified to sit in this cause.