COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

CAMERON O. BAILEY,                                     )

                                                                              )              
No.  08-02-00422-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
283rd District Court

THE STATE OF TEXAS,                                     )

                                                                              )            
of Dallas County, Texas

Appellee.                           )

                                                                              )               
(TC# F-0200019-T)

                                                                              )

 

 

O
P I N I O N

 








Cameron Bailey
appeals from his convictions under the Texas Securities Act on three separate
indictments for:  (1) selling
unregistered securities; (2) selling securities without being a registered
securities salesperson; and (3) engaging in fraud in the sale of securities.[1]  A jury found Bailey guilty of all three
securities fraud charges.[2]  The court sentenced Appellant to 5 years= in jail and a $1,000 fine on two of
the charges, and 8 years=
in jail and a $5,000 fine on the other. 
The court also ordered Appellant to pay restitution of more than half a
million dollars to seven different investors. 
We reverse and remand for a new trial. 

In late 1998,
Appellant began working as a sales person for Cornerstone Financial and sold
purported ACertificates
of Deposit@ (also
referred to as ACDs@) on behalf of Cambridge International
Bank of Grenada.  A number of his clients
testified they bought the Cambridge CDs after seeing newspaper advertisements
offering federally-insured CDs with a 12 percent 

fixed-rate of return.  In February 1999, the Texas Securities Board
began investigating Appellant for alleged illegal sales of viatical contracts.[3]  An investigator for the State, Joseph Oman,
sent Appellant a letter warning him that viaticals are securities, and he was
not registered to sell securities in Texas. 
The State also knew Appellant was also offering the certificates of
deposit, but it never sent him a letter or written document telling him that
those instruments were considered to be securities.








Appellant complied
with the demand by the State Board and stopped selling the viaticals.  In September of 1999, the agency executed a
search warrant on Appellant=s
office, where agents seized files and a computer.  By June or July of 2000, Cornerstone
Financial shut down.  In March 2001,
eighteen months after seizing Appellant=s
files, the agency issued a Acease
and desist@ letter
concerning the certificates of deposit of the Cambridge Bank.  In February of 2002, the State charged
Appellant with knowingly and intentionally offering for sale unregistered
securities in the form of certificates of deposit.  Appellant was never charged in relation to
sales of the viaticals.

Appellant=s single issue on appeal is that Athe trial Court erred in finding as a
matter of law that a certificate of deposit is a security within the meaning of
the [Texas] Securities Act.@  Appellant argues that certificates of deposit
are not securities as a matter of law. 
The State argues the opposite; that they are securities as a matter of
law.  We conclude that whether a nominal
certificate of deposit is or is not a security under the Texas Security Act
depends on the facts and the determination of that issue must be left to a jury
under instructions defining Asecurities@ under the Texas Security Act[4]
and Certificate of deposits under the Texas Business and Commerce Code.[5]  See Gamez v. State, 737 S.W.2d 315,
322 (Tex.Crim.App. 1987).  Accordingly,
we re-frame Appellant=s
complaint to be that the trial court erred in charging the jury that the
certificates of deposit in this case were securities.  See Tex.R.App.P.
'' 38.1, 38.9.  

Standard of Review








Appellate review
of error in a jury charge involves a two‑step process.  Abdnor v. State, 871 S.W.2d 726,
731-32 (Tex.Crim.App. 1994).  We first
determine whether error occurred.  If so,
we must then evaluate whether sufficient harm resulted from the error to require
reversal.  Id. at 731‑32.  Preserved error in the charge requires
reversal if the error caused some harm to the accused from the error.  Tex.Code
Crim.Proc.Ann. art. 36.19 (Vernon 1981); see also Abdnor, 871
S.W.2d at 731‑32; Almanza v. State, 686 S.W.2d 157, 171
(Tex.Crim.App. 1985)(Opin. on reh=g).

The essential
issue in this case is whether the certificates of deposit that Appellant sold
were securities under Texas securities law. 
The State presented two key expert witnesses to establish that they
were.  First, William Kerr, a federal
banking examiner with the Officer of the Comptroller of Currency, testified
that the Cambridge International Bank was an offshore bank that was not
approved to do banking in the United States and that there was no deposit
insurance or other security to protect that bank=s
deposits.  This testimony laid the
predicate for the testimony of David Grauer, director of the Enforcement
Division of the Texas Securities Board. Mr. Grauer gave his opinion that the
instruments sold by Appellant were securities because they were Ainvestment contracts@ and Aevidence
of indebtedness.@  He also testified more boldly, on
cross-examination, that in his opinion all certificates of deposit were
securities except that FDIC insured deposits were Aexempt
securities.@

The trial court
obviously believed that the issue was his to decide as a question of law
because most of Mr. Grauer=s
testimony, and certainly all that was essential to the issue, was presented
outside the presence of the jury.  At the
conclusion of the State=s
case, the trial court denied the defendant=s
Motion for Directed Verdict ruling that the certificates of deposits were
securities.  Then, after both sides
closed, the trial court instructed the jury that Athe
certificates of deposit issued by Cambridge International Bank & Trust.
Ltd., are securities.@

We begin with the
common, ordinary everyday meaning of a nominal certificate of deposit as a
financial instrument.  The Texas Business
and Commerce Code provides us this definition:








>Certificate of deposit= means an instrument containing an
acknowledgment by a bank that a sum of money has been received by the bank and
a promise by the bank to repay the sum of money.  A certificate of deposit is a note of the
bank.

 

Tex.Bus.&Com.Code
Ann. '
3.104(j).

In banking, a
certificate of deposit and savings accounts are classified as a time deposits,
as opposed to checking accounts which are classified as demand deposits, with a
bank or thrift institution.  A
certificate of deposit is purchased from a bank for a fixed sum of money for a
fixed period of time and, in exchange, when the certificate of deposit matures,
the issuing bank pays the original money plus the accrued interest.  The United States and most advanced
industrial countries include the total amount of bank deposits in short-term
savings accounts and certificates of deposit in the money stock or money supply
of the country.  Securities are not
included in the money supply.  Campbell
R. McConnell & Stanley L. Brue, Macroeconomics,
p. 256 (13th ed. 1990).

The Texas State
Securities Act defines securities as: 








The term >security=
or >securities=
shall include any limited partner interest in a limited partnership, share,
stock, treasury stock, stock certificate under a voting trust agreement,
collateral trust certificate, equipment trust certificate, preorganization
certificate or receipt, subscription or reorganization certificate, note, bond,
debenture, mortgage certificate or other evidence of indebtedness, any
form of commercial paper, certificate in or under a profit sharing or
participation agreement, certificate or any instrument representing any
interest in or under an oil, gas or mining lease, fee or title, or any
certificate or instrument representing or secured by an interest in any or all
of the capital, property, assets, profits or earnings of any company,
investment contract, or any other instrument commonly known as a security,
whether similar to those herein referred to or not.  The term applies regardless of whether the >security=
or >securities=
are evidenced by a written instrument. 
Provided, however, that this definition shall not apply to any insurance
policy, endowment policy, annuity contract, optional annuity contract, or any
contract or agreement in relation to and in consequence of any such policy or
contract, issued by an insurance company subject to the supervision or control
of the Texas Department of Insurance when the form of such policy or contract
has been duly filed with the Department as now or hereafter required by law.  [Emphasis added].

 

Tex.Civ.Stat.Ann.
art. 581-4(A)(Vernon Supp. 2004-05).

Obviously, the
Texas statutory definition does not contain the term certificate of deposit.
Despite this omission, the State seeks to persuade us that three Federal civil
cases provide a test that support the trial court=s
finding that these nominal certificates of deposit are securities.  See Securities Exchange and
Commission v. Howey, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946); Marine
Bank v. Weaver, 455 U.S. 551, 102 S.Ct. 1220, 71 L.Ed.2d 409 (1982); Reves
v. Ernst & Young, 494 U.S. 56, 110 S.Ct. 945, 108 L.Ed.2d 47
(1990).  

In Howey,
the Supreme Court found that a land sales and service investment contract was a
security when it was, Aa
contract, transaction or scheme whereby a person invests his money in a common
enterprise and is led to expect profits solely from the efforts of the promoter
or a third party . . . .@  Howey, 328 U.S. at 298-99, 66 S.Ct. at
1103.  This case provides what is called
the Howey or the Ainvestment
contract@
test.  This test may well have
application but its application is dependent not upon a legal construction but
rather the facts of a given case.








In Marine Bank,
the Supreme Court held that a certificate of deposit issued by an American bank
was not a security within the meaning of the Securities Exchange Act, because
Congress did not intend the securities act to provide a broad remedy for all
frauds.  Marine Bank, 455 U.S. at
556, 59, 102 S.Ct. at 1223-24, 1225.  The
Marine Bank Court based its conclusion on the fact that federal banking
regulations were broad enough and deposit insurance was sufficient to protect
purchasers of certificates of deposit at least up to $100,000.  Id. at 552-53 n.1, 102 S.Ct. at 1222
n.1.  The State contends that the Court=s dicta that  A[i]t
is unnecessary to subject issuers of bank certificates of deposit to liability
under the antifraud provisions of the federal securities laws since the holders
of bank certificates of deposit are abundantly protected under the federal
banking laws@ supports
a conclusion that a bank certificate of deposit that is not protected under
banking laws must be a security.  Marine
Bank, 455 U.S. 559, 102 S.Ct. at 1225.

There is a logical
fallacy in that conclusion; it assumes the very thing it seeks to prove. 

In fact, the Court noted in Marine
Bank, 455 U.S. at 551, 102 S.Ct. at 1220, in that case that the Securities
and Exchange Commission joined by the Federal Deposit Insurance Corporation,
the Border of Governors of the Federal Reserve System and the Office of the
Comptroller of the Currency filed an amicus curie that argued that the
certificate of deposit in that case was not a security.

In Reves,
the Court found that by applying a Afamily
resemblance@ test,
uncollateralized and uninsured promissory notes with a constantly revised
interest rate payable on demand were securities, even though they bear little
resemblance to one of the enumerated categories of instruments that are
securities.  Reves, 494 U.S. at
67, 110 S.Ct. at 952.  Just like the Howey
test, such a test could have application but again all determinations
depend more on fact than legal construction. 









Finally, the State
points to civil cases in which courts have said, Ain
searching for the meaning and scope of the word >security= in the Act, form should be disregarded
for substance and the emphasis should be on economic reality.@ 
Tcherepnin v. Knight, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19
L.Ed.2d 564 (1967), citing Howey, 328 U.S. at 298, 66 S.Ct. at
1102.  We find a stark contrast, however,
in a leading Texas criminal case, Bruner v. State, 463 S.W.2d 205
(Tex.Crim.App. 1970) where the Court held that because of the highly penal
nature of the Securities Act, any doubt as to whether an offense has been
committed should be resolved in favor of the accused.  Bruner, 463 S.W.2d at 215.

Moreover, we find Tcherepnin
distinguishable not only because of its civil nature, but also because of the
types of instruments sold.  In Tcherepnin,
purchasers received dividends based on the association=s
profits, not a fixed rate of interest, as in the present case.  Tcherepnin, 389 U.S. at 337, 88 S.Ct.
at 553-54.

In Bruner,
clients were encouraged to invest money into a cleaning products marketing
company that would guarantee dividend and profit payments.  Id. at 207.  In addition, investors would receive a
portion of profits from sales made to guests whom investors would bring to
dinner parties given by the company.  Id.  A state securities regulator testified that
it was his opinion that the investment contracts offered by the company were,
in fact, securities.  Id. at 210.
There, as here, the court was unconvinced. 
The Bruner Court said the State=s
logic was flawed because the profits did not rely solely on the efforts of
others, as required by the Howey test. 
Id. at 214.

We do not say that
something called a certificate of deposit is not a security.  We simply say that whether a certificate of
deposit or some other labeled instrument is a security can not be determined in
the abstract but must be determined after a careful consideration of the
context.  It is, in other words, a fact
question that should have been put to the jury with appropriate
instructions.  But because the jury did
not hear the key witness who provided the necessary context, substance, and
reality surrounding the sale, even if they had been properly instructed, they
would not have had sufficient facts to make such a determination.  We must therefore 

 








sustain the sole issue presented
and remand the case for a new trial.

 

August
31, 2004

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 3

Barajas, C.J., Larsen, and Chew, JJ.

 

(Publish)











[1]
This opinion is one of three essentially identical opinions.  Appellant was charged in cause numbers
F-0200019-T, F-0200037-T, and F-0200035-T of the offense of selling
unregistered securities under the Texas Securities Act.





[2]
As the record suggests and Bailey=s
counsel confirmed during oral argument, the three indictments here were among
thirty-four indictments against Bailey. 
The other indictments were made under the Penal Code and have been
adjudicated.





[3]
A viatical contract or settlement is defined as an agreement that is solicited,
negotiated, offered, entered into, delivered, or issued for delivery in this
state under which a person pays anything of value that is:  (A) less than the expected death benefit of a
policy insuring the life of an individual who has a catastrophic or
life-threatening illness or condition; and (B) paid in return for the policy
owner=s or
certificate holder=s
assignment, transfer, bequest, devise, or sale of the death benefit under or
ownership of the policy.  Tex.Ins.Code Ann. ' 1111.001(3) (Vernon Supp. 2003).





[4]
Tex.Civ.Stat.Ann. art. 581-4
(Vernon Supp 2004-05).





[5]
Tex.Bus.&Com.Code Ann. ' 3.104(j)(Vernon 2002).