TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00823-CR






Bill Wallace, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT


NO. 0974658, HONORABLE TOM BLACKWELL, JUDGE PRESIDING







 A jury found appellant Bill Wallace guilty of murder. See Tex. Penal Code Ann.
§ 19.02(b) (West 1994). The trial court assessed punishment at twenty-five years in prison. On
appeal, Wallace raises three points of error complaining that an out-of-court identification was
impermissibly suggestive and the evidence was legally and factually insufficient to corroborate the
accomplice-witness testimony. We will affirm the judgment of conviction.


Background


 On November 23, 1996, Austin Police Department detective Robert Stintson was
called to a house on Georgian Drive to investigate a shooting. When Stintson arrived, he found
Baltazar Moreno shot to death. Several Hispanic people present at the scene told Stintson that
three young African-American males were responsible for the shooting.

 According to testimony, late in the night of November 23, a group of Hispanic
men, Jorge Gonzalez, German Gonzalez, Heriberto Gonzalez and Baltazar Moreno, gathered
outside a house on Georgian preparing to take Jorge home. (1) Three African-American males
approached the Hispanic group and asked them to move off the sidewalk so they could pass by. 
The two groups exchanged contentious words but the three young men moved on. A little while
later the three men returned and one of them said "what's up" to the Hispanic men. One of the
Hispanic men replied "what's up" back to them. Another told the three young men to "leave us
alone, we don't want any trouble." As the three men walked away, one of them turned around
and lifted his shirt to show that he had a gun or to scare the Hispanic group. All but one of the
Hispanic men later recognized him only as the shortest of the three men. Soon the three men
returned again. Fearing trouble, Heriberto asked his wife to call the police while he went to
retrieve his gun. As his wife was on the phone, but before he was able to get his gun, Heriberto
heard the fatal shots. Heriberto went outside and fired gunshots into the air. He noticed that
Moreno had been shot, pulled him into the house and began administering CPR. He was
unsuccessful in reviving Moreno. 

 Austin Police Detective Ernest Pedraza was the case agent for the Moreno
homicide. During his investigation, he learned that two of the suspects could be "Bill and Eric." 
After Pedraza attempted to contact these two individuals, Eric's mother, Annie Wilson, called
Pedraza. Pedraza told Annie Wilson that he wanted to talk with her son, James Wilson. Annie
Wilson arranged for Pedraza to meet with James and another boy, Wilson Nunley. (2) Wilson and
Nunley told Pedraza they wanted to talk with him about the shooting on November 23 on
Georgian. Pedraza asked Wilson and Nunley to come to the police station where he could talk to
each of them separately. After they were interviewed separately at the police station, Wilson
directed Pedraza to the gun used that night which was located in a metal box in a vacant lot near
his house. Based upon what the boys told Pedraza, Wallace was arrested the next day.

 Wilson, a high school student, testified about the night of the murder. He said that
Wallace had traded a .380 gun for a .22 caliber handgun earlier that day. That night, Wallace,
Wilson, and Nunley were dropped off at a nearby Whataburger. The boys were walking back to
Wilson's house from the Whataburger when Wallace said he had to retrieve something he had put
in the grass. As it turned out, he returned with a cartridge of bullets. He then stopped to hide his
gun in a frame built around a tree in a yard because he did not want to get caught with both a gun
and bullets on him. Afterward, the three passed the group of Hispanic men on Georgian who did
not want to move off the sidewalk to let the boys pass by. This occurred a few houses away from
Wilson's house. The three continued down the street toward Wilson's house and then turned
around and approached the Hispanic group again. One of the Hispanic men said something in
Spanish and the three men believed the comment was directed at them. After the three walked
away, Wallace became angry because he thought the Hispanic group had acted with disrespect and
had "flashed like they had a gun." According to Wilson, Wallace stated, "man they done dissed
us--do you want to blast?" Wilson tried to talk Wallace out of any further action because it was
near his house; Wallace responded by accusing Wilson of being a scared punk. Wilson then
noticed Wallace heading toward the place where the gun was hidden. Wilson, however, continued
to walk toward his house. After walking a little way, Wilson turned around and saw Nunley close
behind him and at that point he heard gunshots. Wilson admitted in a prior statement to the police
given shortly after the incident that when he turned around he saw Wallace pick up the gun and
fire it. At trial, he claimed that he did not remember seeing Wallace shoot the gun but stated that
his memory was fresher at the time he gave the statement to the police which had been over a year
before.

 Shortly after the gunshots, Wilson saw Wallace running up Georgian away from
the victim's house. A few minutes later, Wallace appeared at Wilson's house and told him that
he had placed the gun in Wilson's dirty clothes hamper. Wilson then retrieved the gun and placed
it in a shoebox at the top of a closet.

 The next day, Wallace and Wilson walked by the victim's house. Wallace retrieved
the gun from Wilson. Wallace told Wilson that someone in the Hispanic group had shot at him
first. Later, Wallace took the gun apart, cleaned it, and left it at Wilson's house. Wilson then hid
the gun in a vacant lot on a dead-end street after telling Wallace that detective Pedraza had come
by asking questions about the shooting. Later, Wilson discussed the entire incident with his
mother and Nunley and they decided to talk to Pedraza. Wilson then led Pedraza to the gun.

 Nunley, also a high school student, testified about the night of the shooting and
corroborated many details of the offense. Nunley recalled seeing Wallace hide the gun, a chrome
.22, across the street from Wilson's house on the night of the murder. Nunley testified that none
of the Hispanic men had threatened the three but, like Wilson, Nunley recalled that Wallace was
angry merely because of the exchange of words. Nunley recalled that Wallace announced that he
had "something" for the Hispanic men, referring to his gun. Nunley said that he and Wilson tried
to calm Wallace down, telling him not to worry about the Hispanic men and to leave them alone
because "they don't want to do nothing." Nunley explained that Wallace retrieved the gun from
the hiding place, went back to the Hispanic gathering and started shooting. Nunley thought that
Wallace shot at the group about three times. Afterwards, when the three gathered back at
Wilson's house, Wallace told Nunley, "I shot at the Mexicans." 


Discussion


 By three points of error, Wallace contends the trial court erred by failing to
suppress German Gonzalez's identification testimony because it was based upon an impermissibly
suggestive out-of-court identification. Additionally, Wallace contends the evidence was legally
insufficient to support the conviction because the State failed to provide sufficient evidence to
corroborate the accomplice-witness testimony. Finally, Wallace contends the evidence is factually
insufficient to support the conviction because the State's only corroborative evidence was the
tainted identification testimony.


Pre-Trial Photo Lineup

 Wallace contends in his first point of error that German's in-court identification
testimony was tainted by an impermissibly suggestive out-of-court identification procedure. 
Wallace contends that the identification procedure was impermissibly suggestive because the
pictures of the three suspects each appeared in the number three position of the lineups.

 Before trial, Wallace filed a motion to suppress identification testimony. The
district court held a pretrial hearing on the motion at which Pedraza and German testified. 
Pedraza put together nine different photo lineups of six photographs each that were labeled A
through I and showed them to several members of the Hispanic group. The photographs in the
lineups were all of African-American men, of similar age and physical appearance. Each person
in the photos had closely trimmed hair and similar facial expressions. Lineups A through C were
shown on one date, D through F on another date, and G through I were shown on a third date. 
Nunley appeared in lineup G, Wilson appeared in lineup H, and Wallace appeared in lineup I. 
Pedraza explained that only by chance did the photos of each of the three suspects appear at
position three in the respective lineups. None of the Hispanic group members recognized any of
the individuals in the first six lineups as being present the night of the shooting. German,
however, recognized Nunley, Wilson, and Wallace in the last three lineups and picked them out
as the three African-American men that were involved in the events on the night of the shooting.

 German testified that he did not attach any significance to the pictures of the three
men all appearing in the third position of the lineups. German also stated that Pedraza never
suggested whom he should pick out of the lineups.

 The district court did not rule on the motion to suppress at the conclusion of the
hearing. Rather, he set the ruling on all pretrial matters for another date. Ultimately, the district
court never ruled on the motion to suppress. (3) At trial, before German testified, Wallace once
again renewed his lineup objection but failed to ask for a ruling.

 If a complaining party fails to obtain a ruling on a motion to suppress, error is not
preserved for appeal. See Thomas v. State, 884 S.W.2d 215, 216 (Tex. App.--El Paso 1994, pet.
ref'd); Wilson v. State, 857 S.W.2d 90, 94 (Tex. App.--Corpus Christi 1993, pet. ref'd); Tex.
R. App. P. 33.1. Since Wallace did not obtain a ruling on his motion to suppress, he has not
preserved this point of error for appellate review.

 Moreover, we conclude that even if Wallace had obtained a ruling and preserved
error, the photo lineups were not impermissibly suggestive. The burden is on the defendant to
show by clear and convincing evidence that the in-court identification is unreliable. See Harris
v. State, 827 S.W.2d 949, 959 (Tex. Crim. App. 1992). When analyzing the admissibility of in-court identification testimony, the reviewing court uses a two-step analysis and examines the
totality of the circumstances to determine: (1) if the out-of-court identification procedure was
impermissibly suggestive; and (2) if so, whether the impermissibly suggestive procedure gave rise
to a substantial likelihood of irreparable misidentification. See Barley v. State, 906 S.W.2d 27,
33 (Tex. Crim. App. 1995) (citing Simmons v. United States, 390 U.S. 377 (1968)).

 Wallace has not met the first prong of the analysis. Wallace's sole complaint is that
the photos of the three people whom the police wanted German to identify were each in the
number three position on the last three lineups shown. The evidence at the pretrial hearing
showed that the number three position did not mean anything to anyone. The photos were all very
similar in that they showed suspects and non-suspects of the same race and age, with similar
physical appearance, hair, and facial expressions. Pedraza used a computer system to select
individuals with a similar appearance to those of the suspects and used Polaroids when he could
not get enough pictures from the computer retrieval system. German testified that Pedraza never
suggested whom he should select out of the lineups. Wallace failed to preserve error, if any; and
if preserved, the out-of-court identification procedure was not impermissibly suggestive. Point
of error one is overruled.


Sufficiency of the Evidence

 Wallace contends in his second point of error that the evidence is legally insufficient
to support the conviction because the State failed to provide sufficient evidence to corroborate the
accomplice-witness testimony of Wilson and Nunley. The State responds that Wallace cannot
prevail with this argument because Wilson and Nunley were not accomplice witnesses. 
Alternatively, the State argues that, even if the two were accomplice witnesses, sufficient evidence
exists to corroborate their testimony.

 An accomplice witness is someone who has participated with another person before,
during, or after commission of a crime. Kunkle v. State, 771 S.W.2d 435, 439 (Tex. Crim. App.
1986). A conviction cannot be upheld upon the testimony of any accomplice unless corroborated
by other evidence tending to connect the defendant with the offense committed. Tex. Code Crim.
Proc. Ann. art. 38.14 (West 1979). The corroboration is not sufficient if it merely shows the
offense was committed. Id. 

 The evidence in a case determines whether a jury instruction needs to be given
regarding accomplice witnesses. Elliot v. State, 976 S.W.2d 355, 357 (Tex. App.--Austin 1998,
pet. ref'd) (citing Gamez v. State, 737 S.W.2d 315, 323 n. 10 (Tex. Crim. App. 1987)). If the
evidence raises a question about whether a witness is an accomplice, the trial court acts properly
by submitting that fact issue to the jury. Id.

 The district court instructed the jury to determine as a question of fact whether
Wilson and Nunley were accomplice witnesses. Further, the court instructed the jury that if they
found that either Wilson or Nunley was an accomplice witness they could not convict Wallace
unless other evidence corroborated their testimony. Additionally, the trial court instructed the jury
that, if they found that both Wilson and Nunley were accomplice witnesses, the jury could not use
the testimony of one to corroborate the other's testimony. (4)

 The appellate court presumes that the jury followed the court's charge. Gamez, 737
S.W.2d at 324. In determining the legal sufficiency of the evidence to support a criminal
conviction, the question is whether, after viewing all the evidence in the light most favorable to
the verdict, any rational trier of fact could have found the essential elements of the offense beyond
a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979); Geesa v. State, 820 S.W.2d 154
(Tex. Crim. App. 1991); Griffin v. State, 614 S.W.2d 155 (Tex. Crim. App. 1981). The jury is
the exclusive judge of the credibility of witnesses and the weight to be given their testimony and
is free to accept or reject all or any part of any witness's testimony. Adelman v. State, 828
S.W.2d 418, 421 (Tex. Crim. App. 1992). The jury may draw reasonable inferences and make
reasonable deductions from the evidence. Benavides v. State, 763 S.W.2d 587, 588-89 (Tex.
App.--Corpus Christi 1988, pet. ref'd). The jury reconciles any evidentiary conflicts. Miller v.
State, 909 S.W.2d 586, 593 (Tex. App.--Austin 1995, no pet.) (citing Bowden v. State, 628
S.W.2d 782, 787 (Tex. Crim. App. 1982)).

 In light of the evidence, the court's charge, and the jury's verdict, we conclude that
the jury could have failed to find that Wilson and Nunley were accomplice witnesses. See Elliott,
976 S.W.2d at 358; Dears v. State, 506 S.W.2d 606, 608 (Tex. Crim. App. 1974). Both Wilson
and Nunley tried to talk Wallace out of any retaliatory action toward the Hispanic group. Wilson
and Nunley both testified that the Hispanic group expressed no intent to harm them. Both were
walking toward Wilson's house when Wallace retrieved his gun and shot into the Hispanic group.

 Moreover, even if Wilson and Nunley were accomplices, sufficient evidence exists
to support Wallace's conviction. The test for sufficient corroboration is to eliminate from
consideration the accomplice testimony and then examine the other inculpatory evidence to
ascertain whether the remaining evidence tends to connect the defendant with the offense. 
Hernandez v. State, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997); Burks v. State, 876 S.W.2d
877, 887 (Tex. Crim. App. 1994). The non-accomplice evidence need not be sufficient in itself
to establish the accused's guilt beyond a reasonable doubt. Hernandez, 939 S.W.2d at 173 (citing
Reed v. State, 744 S.W.2d 112, 125 (Tex. Crim. App. 1988)). Nor is it necessary for the non-accomplice witness testimony to directly link the accused to the commission of the offense. 
Hernandez, 939 S.W.2d at 173 (citing Reynolds v. State, 489 S.W.2d 866, 872 (Tex. Crim. App.
1972)). The accomplice-witness rule is satisfied if there is some non-accomplice evidence which
tends to connect the accused to the commission of the offense alleged in the indictment. 
Hernandez, 939 S.W.2d at 173 (citing Gill v. State, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994)). 

 Viewing the evidence most favorably to the jury's verdict, if Wilson and Nunley
were accomplice witnesses, other non-accomplice-witness testimony tending to connect Wallace
to the offense includes: (1) Annie Wilson's testimony that she dropped off Wallace, Wilson and
Nunley at her house a few houses away from where the incident occurred thereby placing the three
men together near the scene that night; (2) Heriberto recalled seeing the three men together that
night noting that one was shorter than the other two; (3) he also recalled the shorter one (Wallace)
raised his shirt to show a weapon or to scare the group of Hispanic men; (4) German testified that
he was able to pick out Wallace from a photo lineup as the person who raised his shirt and
threatened violence the night of the killing; and (5) Salvador testified that it was the shorter of the
three men who had said "what's up" in a menacing tone. While these facts do not directly link
Wallace to the offense, they do tend to connect Wallace to the commission of the offense. Point
of error two is overruled.

 Wallace contends in point of error three that the evidence is factually insufficient
to support the conviction because the State failed to provide sufficient evidence to corroborate the
accomplice-witness testimony other than the tainted identification testimony of German.

 An appellate court will set aside a verdict for factual insufficiency only if the verdict
is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly
unjust. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); Stone v. State, 823 S.W.2d
375, 381 (Tex. App.--Austin 1992, pet. ref'd untimely filed). In a factual sufficiency review, we
do not view the evidence in the light most favorable to the verdict. Instead, we consider all of the
evidence equally, including the testimony of defense witnesses and the existence of alternative
hypothesis. Orona v. State, 836 S.W. 2d 319 (Tex. App.--Austin 1992, no pet.).

 We conclude that the verdict is not contrary to the overwhelming weight of the
evidence. The out-of-court identification procedure in which German was involved was not
impermissibly suggestive. Additionally, the jury was entitled to determine that Wilson and Nunley
were not proven to be accomplices, and even if they were, sufficient evidence linked Wallace to
the commission of the offense. Point of error three is overruled.

 Wallace raises a supplemental point of error in his reply brief contending that, if
the appellate court agrees with the State that Wallace did not preserve for review his point of error
regarding the identification procedure, his counsel was ineffective in failing to obtain a ruling on
the motion to suppress. While we agreed with the State that Wallace failed to preserve error
regarding the identification procedure, we also held that the identification procedure was not
impermissibly suggestive. We overrule Wallace's supplemental point of error.


Conclusion


 The conviction is affirmed.



 

 J. Woodfin Jones, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: April 8, 1999

Do Not Publish

1.   For convenience, we will refer to the Gonzalezes by their first names.
2.   To avoid confusion of James Wilson and Wilson Nunley, we refer to them by their last
names.
3.   The pretrial suppression hearing was held pursuant to cause number 0971273 which was
dismissed. Wallace was tried under cause 0974658.
4.   The district court's jury instruction on accomplice witnesses was as follows:


 An accomplice as the word is here used, means anyone connected with the
crime charged, as a party to the offense. A person is criminally responsible as a party
to an offense if the offense is committed by his own conduct, by the conduct of
another for which he is criminally responsible, or by both.


 A person is criminally responsible for an offense committed by the conduct of
another if acting with intent to promote or assist the commission of the offense, he
solicits, encourages, directs, aids or attempts to aid the other person to commit the
offense. Mere presence alone will not constitute one a party to an offense.


 You are further instructed that mere presence of the accused in the company
of an accomplice witness shortly before or after the time of the offense, if any, is not,
in itself, sufficient corroboration of the accomplice witness' testimony.


 You are further instructed that accomplice witnesses can not corroborate each
other.


 A conviction cannot be had upon the testimony of an accomplice unless the
jury first believes that the accomplice's evidence is true and that it shows the
defendant is guilty of the offense charged against him, and even then you cannot
convict unless the accomplice's testimony is corroborated by other evidence tending
to connect the defendant with the offense charged, and the corroboration is not
sufficient if it merely shows the commission of the offense, but it must tend to connect
the defendant with its commission.


 If you find from the evidence that the witness, James Wilson and/or Wilson
Nunley, were accomplices, or you have a reasonable doubt thereof, as that term is
defined to you in these instructions, then you are instructed that if you find beyond a
reasonable doubt that an offense was committed, you cannot find the defendant, Bill
Wallace, guilty upon the testimony of an accomplice unless you first believe that the
testimony of the said James Wilson and/or Wilson Nunley is true and that it shows the
defendant is guilty as charged in the indictment; and even then you cannot convict the
defendant unless you further believe that there is other evidence in this case, outside
the evidence of an accomplice, tending to connect the defendant with the commission
of the offense charged in the indictment and then from all the evidence you must
believe beyond a reasonable doubt that the defendant is guilty. 


e appellate court agrees with the State that Wallace did not preserve for review his point of error
regarding the identification procedure, his counsel was ineffective in failing to obtain a ruling on
the motion to suppress. While we agreed with the State that Wallace failed to preserve error
regarding the identification procedure, we also held that the identification procedure was not
impermissibly suggestive. We overrule Wallace's supplemental point of error.


Conclusion


 The conviction is affirmed.



 

 J. Woodfin Jones, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: Ap