COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

 

                                                                              )

                                                                              )

                                                                              )             
No.  08-03-00277-CR

                                                                              )

IN RE:  EDUARDO CHAVEZ                              )     AN
ORIGINAL PROCEEDING

                                                                              )

                                                                              )                
IN MANDAMUS

                                                                              )

                                                                              )

 

 

OPINION
ON WRIT OF MANDAMUS

 

Relators Eduardo
Chavez and Cesar De Leon seek mandamus relief directing Respondent, the
Honorable Luis Aguilar, judge of the 120th Judicial District Court of El Paso
County to recuse himself from their cases, or in the alternative, relief
directing Judge Aguilar to refer their respective motions to recuse to the
presiding judge in this administrative judicial region for proper adjudication.[1]  Relators also request a writ of prohibition
to prohibit Judge Aguilar from exercising jurisdiction over their cases.  The real parties in interest in each cause
are their attorneys Joseph (Sib) Abraham, Jr. and Kathleen Salome Smith.  We must deny mandamus relief in each cause.

 








FACTUAL
AND PROCEDURAL BACKGROUND

Relators= complaints about Judge Aguilar=s alleged personal bias arise from
events which occurred in April 2002, during which Judge Aguilar was a candidate
for judicial office for the 120th Judicial District Court.  At that time, Mr. Joseph (Sib) Abraham and
Ms. Kathleen Salome Smith, together as the Law Offices of Joseph (Sib) Abraham,
Jr., were attorneys representing their client Javier Favela in a criminal
matter then pending in the United States District Court in El Paso, Texas.  During the course of that representation, Mr.
Favela was critically injured in a traffic accident during an inmate transfer
movement by the U.S. Marshal Service on April 10, 2002.  The marshals immediately contacted the Law
Offices of Joseph (Sib) Abraham, Jr. and informed them of the accident and
requested that they notify the Favela family. 
In addition, the U.S. Marshal Service requested that the law office
serve as liaison between the Favela family, medical personnel, and the Marshal
Service since Mr. Favela was still considered a prisoner in federal custody who
could not have physical contact with family members.  Ms. Smith went to Thomason Hospital, where
she was eventually met by Favela family members.








The next day,
April 11, 2002, numerous individuals approached the Favela family at Thomason
Hospital while their attorney Ms. Smith was present.  These individuals included attorneys
attempting to solicit representation of Mr. Favela in any personal injury
litigation against those agencies involved in the traffic accident.  Judge Aguilar, then a judicial candidate, was
among the attorneys present at Thomason Hospital.  The Favela family members advised those
individuals in the presence of U.S. Marshals, that the law office of Joseph
(Sib) Abraham, Jr. would be handling the representation of Javier Favela and
his family.  Mr. Abraham=s law office continued to represent the
Favela family interests until April 13, 2002, two days later, when the Favela
family informed Mr. Abraham and Ms. Smith that they had retained the services
of another attorney, Luis Aguilar, now Judge Luis Aguilar.  The conduct of Judge Luis Aguilar at the
hospital, and days thereafter, is the foundation for the subsequent motions to
recuse.

In each case
identical recusal motions allege that prior to being hired by the Favelas,
Judge Aguilar appeared at Thomason Hospital, supposedly on behalf of the Favela=s church community.  Relators contended that although Judge Aguilar
knew that the Favelas had secured the Law Offices of Joseph (Sib) Abraham, Jr.
as their counsel and had seen Ms. Smith at the hospital, his true purpose was
to procure legal employment and the Favela=s
personal injury case.  On April 15, 2002,
Judge Aguilar formally informed Ms. Smith that he had been retained by all of
Mr. Favela=s heirs
to represent their interests regarding any personal injury claim.  On April 16, 2002, Ms. Smith sent a
letter complaining about Judge Aguilar=s
solicitation of business.  Ms. Smith
stated that Judge Aguilar was certainly aware that she represented
Mr. Favela in his federal criminal proceedings and was the individual
first contacted by the U.S. Marshal Service. 
Ms. Smith further stated that she was present at Thomason Hospital with
Mr. Favela from Wednesday, April 10, 2002, until the early hours of the
following morning, Thursday, April 11, 2002, from approximately 10 a.m. to 9
p.m. on that same date, and again on Friday, April 12, 2002, from approximately
9:30 a.m. to 12:30 p.m. and from 3:15 p.m. to 5 p.m.  During this time period, it was Ms. Smith=s understanding, based on her
communication with the Favela family that she would be handling any personal
injury claim.  With respect to the
solicitation, Ms. Smith wrote,








I have always upheld an impeccable
ethical reputation and I did not, given the very grave nature of Mr. Favela=s injuries and the family=s anguish, believe it appropriate or
considerate to require the Favelas to sign a formal contract with me at that
time.  Their word was sufficient for
me.  I could not have anticipated that an
individual newly elected for a judicial position and who I am certain embodies
the utmost respect for legal ethics would appear at the hospital as a representative
of the Favela=s church
community--and enter into a legal discussion with them when it was well-known
by you that I represented them.

 

After receipt of Ms. Smith=s letter, Judge Aguilar orally
communicated with Mr. Abraham concerning the Favela situation.  During their conversation, Judge Aguilar
allegedly referred to and described Ms. Smith in a derogatory and unkind
manner.  Ms. Smith and Judge Aguilar had
no further communication or contact until March 2003 at which time Ms. Smith
appeared on behalf of Mr. Abraham as counsel for their client David Estrada in
the case styled State v. Estrada before Judge Aguilar in the 120th
Judicial District Court.

Relators= recusal motions also detail Judge
Aguilar=s actions
as presiding judge in State v. Estrada during March and April 2003,
prior to his recusal, which Relators assert evidenced his deep-rooted bias
against the Relators.  In the Estrada
case, Judge Aguilar scheduled that case for trial on a date which Ms. Smith had
previously and formally notified the court would conflict with a specially
scheduled jury trial in the State of Texas v. Trent Eigner in the 41st
Impact Court of El Paso County.  At the
April 2, 2003 hearing on the motion to continue filed in Estrada based
on this scheduling conflict, counsel Ray Velarde appeared before Respondent on
behalf of the law office of Joseph (Sib) Abraham, Jr. to urge Mr. Abraham=s motion for continuance of that
hearing filed April 1, 2003.  Respondent
denied the motion to continue.








In March 2003, Mr.
Abraham with counsel Ray Velarde were scheduled for a status conference in an
unrelated civil forfeiture case before Judge Aguilar.  When associate Ms. Smith failed to appear
precisely at 9:30 a.m., Judge Aguilar sua sponte granted a post answer
default judgment in favor of the State of Texas.  Ms. Smith was admittedly tardy to the
conference because she was still appearing before the Hon. David Briones, a
federal district judge for the Western District of Texas, El Paso Division in
three cases.  Prior to the status
conference, the State and claimants had been involved in settlement
negotiations, which they continued after the judge=s
action.  However, upon information and
belief, counsel understood that Judge Aguilar 
would not accept their settlement agreement or an agreed judgment.  On April 4, 2003, Mr. Abraham, Ms.
Smith, and Mr. Velarde filed a motion for new trial in the civil case, and
attached to their April 11 amended motion a letter from Judge Briones to Judge
Aguilar, confirming that Ms. Smith was in his court for mandatory docket call,
which lasted longer than he had anticipated. 
Though the State did not oppose the motion for new trial, Judge Aguilar
denied the motion at the April 25 hearing on the matter.








On May 2, 2003,
Mr. Abraham and Ms. Smith filed a motion to recuse based on the allegations
described above on behalf of their client in State of Texas v. David Estrada.  This motion is identical to the recusal
motions the attorneys would later file in Relator Chavez=s
case on May 28, 2003 and Relator De Leon=s
case on June 5, 2003.  In the Estrada
case, Judge Aguilar properly referred the motion to the administrative judge of
the Sixth Administrative Judicial Region. 
The Honorable Kathleen Cardone conducted a hearing on the Estrada
recusal motion on May 30, 2003.  At the Estrada
hearing, Judge Aguilar was represented by attorney ad litem Stuart Leeds.  On June 2, 2003, Judge Cardone granted the
motion to recuse in State v. Estrada, finding that grounds existed to
justify recusal of Judge Aguilar based on his alleged bias against Mr. Abraham
and Ms. Smith.  Judge Cardone ordered
Judge Aguilar to recuse himself from further proceedings in the Estrada
case.  On June 3, 2003, Judge Aguilar
filed a motion for reconsideration in the Estrada case, to which Mr.
Abraham and Ms. Smith as Estrada=s
counsel filed a response.  On June 5,
2003, Judge Aguilar filed a reply to the response, alleging for the first time
that the motion to recuse in Estrada did not state adequate grounds for
recusal and was not Aprima
facie adequated [sic].@

On the same date,
in Relator Chavez=s case,
Stuart Leeds, acting as AAttorney
ad Litem for Judge Aguilar,@
filed a AMotion to
Strike/Quash Motion to Recuse.@  In the motion, Judge Aguilar through his ad
litem counsel requested that he, Judge Aguilar, strike the motion to recuse
filed on May 28, 2003, because it failed to state with Aparticularity@ the grounds for recusal, was based on Aunidentified hearsay,@ was not Afacially
sufficient and prima facie adequated [sic],@
and A[did] not
even allege proper grounds for recusal.@  On June 6, 2003, Judge Aguilar granted his
own motion to quash Relator Chavez=s
recusal motion, finding that the recusal motion was facially insufficient, not Aprima facie adequated [sic],@ and had failed to allege proper
grounds for recusal.  In ruling on his
own motion, Judge Aguilar stated, Aa
proper Motion to Recuse is not before the trial judge and this case will not be
referred to the presiding judge of the administrative judicial district to have
another judge hear the motion.@  On the same date, Judge Aguilar also issued
an order denying Relator De Leon=s
recusal motion based on the same reasoning.

DISCUSSION

Disqualification
and Recusal








A trial judge may
be removed from presiding over a particular case because:  (1) he/she 
is disqualified under Article V, section 11 of the Texas Constitution;
(2) he/she is disqualified under Section 74.053 of the Government Code; or (3)
he/she is subject to recusal under civil procedure Rules 18a and 18b.  In re Union Pacific Resources Co., 969
S.W.2d 427, 428 (Tex. 1998)(orig. proceeding). 
The grounds and procedures for each type of removal are fundamentally
different.  In re Union Pacific
Resources Co., 969 S.W.2d at 428.

With respect to
disqualification, Article V, section 11 of the Texas Constitution provides in
pertinent part:

No judge shall sit in any case wherein
he may be interested, or where either of the parties may be connected with the
judge, either by affinity or consanguinity, within such a degree as may be
prescribed by law, or when the judge shall have been counsel in the case.

 

Tex.Const.
art. V, ' 11
(Vernon Supp. 2003).  Moreover, in a
criminal case, disqualification of a judge can occur when:  (1) the judge is the injured party; (2) the
judge has been counsel for the accused or the State; or (3) the judge is
related to the accused or the injured party by consanguinity or affinity within
the third degree.  See Tex.Code Crim.Proc.Ann. art. 30.01
(Vernon Supp. 2003).  These provisions
have been held mandatory.  Gamez v.
State, 737 S.W.2d 315, 318 (Tex.Crim.App. 1987).  In addition to constitutional and statutory
prohibitions, the Court of Criminal Appeals has recognized Ajudicial bias@
as a ground for legal disqualification only in those cases in which the bias is
shown to be of such a nature and to such an extent as to deny a defendant due
process of law.  McClenan v. State,
661 S.W.2d 108, 109 (Tex.Crim.App. 1983). 
Disqualification of a judge cannot be waived, even by consent of the
parties, and the issue may be raised at any time.  Gamez, 737 S.W.2d at 318.








Recusal, on the
other hand, includes those instances in which a judge voluntarily steps down
and those instances in which a judge is required to step down on a motion of a
party for reasons other than those enumerated as grounds for disqualification
in the Texas constitution.  Degarmo v.
State, 922 S.W.2d 256, 267 (Tex.App.--Houston [14th Dist.] 1996, writ ref=d). 
Rule 18a of the Texas Rules of Civil Procedure governs recusal of
judges.  See Tex.R.Civ.P. 18a; Arnold v. State,
853 S.W.2d 543, 544 (Tex.Crim.App. 1993)(en banc)(Rule 18a applies in criminal
cases).  In order to recuse a judge, any
party may file a motion stating why the judge before whom the case is pending
should not sit in the case.  Tex.R.Civ.P. 18a(a).  The motion must be filed at least ten days
before the date set for trial or other hearing, must be verified, and must
state with particularity the grounds for recusal.[2]  Id. 
The motion shall be made on personal knowledge and shall set forth such
facts as would be admissible in evidence provided that such facts may be stated
upon information and belief if the grounds of such belief are specifically
stated.  Id.  Prior to any further proceedings in the case,
the judge shall either recuse himself/herself or request the presiding judge of
the administrative judicial district to assign a judge to hear the motion.  Tex.R.Civ.P.
18a(c).  If that motion is denied, the
standard of review is abuse of discretion on appeal from the final
judgment.  Tex.R.Civ.P. 18a(f); In re Union Pacific Resources Co.,
969 S.W.2d at 428.








In criminal cases,
the law has developed that a criminal trial judge may make an initial
determination as to whether the recusal motion conforms with Rule 18a(a).[3]  See Arnold, 853 S.W.2d at 544-45
(finding that appellants=
recusal motions failed to comply with the ten-day notice provision of Rule
18a); Moorhead v. State, 972 S.W.2d 93, 95 (Tex.App.--Texarkana 1998, no
pet.)(no error for failure to refer where recusal motion was unverified); Sanchez
v. State, 926 S.W.2d 391, 396 (Tex.App.--El Paso 1996, writ ref=d)(a trial judge may properly make the
initial determination as to whether a recusal motion is in compliance with the
rule); Bruno v. State, 916 S.W.2d 4, 8 (Tex.App.--Houston [1st Dist.]
1995, writ ref=d)(trial
judge inaction on defective motion was not error); Vargas v. State, 883
S.W.2d 256, 259 (Tex.App.--Corpus Christi 1994, writ ref=d)(mandatory
referral provisions not triggered when recusal motion is procedurally
defective).  If the motion is
procedurally sound, the criminal trial judge, as in civil cases, is required to
either self recuse or to refer the recusal motion to the presiding judge of the
administrative region for assignment to another judge for hearing and
disposition.  Bruno, 916 S.W.2d at
8.

Mandamus
Relief








This Court has
authority to grant mandamus relief if the relator can demonstrate that (1) he
has no other adequate legal remedy; and (2) under the relevant facts and law,
the act sought to be compelled is purely ministerial.  State ex rel. Hill v. Court of Appeals for
the Fifth Dist., 34 S.W.3d 924, 927 (Tex.Crim.App. 2001)(orig. proceeding),
citing Dickens v. Court of Appeals for Second Supreme Judicial Dist.
of Texas, 727 S.W.2d 542, 550 (Tex.Crim.App. 1987)(orig. proceeding).  An act is Aministerial@ if the relator has a clear right to
the relief sought, that is, the relief sought must be Aclear
and indisputable@ such
that its merits are Abeyond
dispute@ with Anothing left to the exercise of
discretion or judgment.@  State ex rel. Rosenthal v. Poe, 98
S.W.3d 194, 198 (Tex.Crim.App. 2003)(orig. proceeding).  If an adequate remedy at law is available in
the form of an appeal, it is an abuse of discretion for this Court to grant
mandamus relief.  Alvarez v. Eighth
Court of Appeals of Tex., 977 S.W.2d 590, 592 (Tex.Crim.App. 1998).  

Judge Aguilar has
filed a response to Relators=
petitions for writ of mandamus, in which inter alia, he argues that
under Woodard v. The Eighth Court of Appeals, 991 S.W.2d 795, 796
(Tex.Crim.App. 1998), Relators have an adequate remedy at law and therefore,
are not entitled to mandamus relief.  In Woodard,
the Court of Criminal Appeals held that this Court had abused its discretion in
granting mandamus relief against Judge Jerry Woodard by our opinion In re
Castillo, No. 08-97-00479-CR, 1998 WL 197656, opinion vacated and withdrawn
on August 21, 1998 (Tex.App.--El Paso April 23, 1998).  Woodard, 991 S.W.2d at 796-97.  In the underlying case, Judge Woodard had
overruled relator=s fourth
amended motion to recuse without a hearing and without referral to the
presiding judge of the administrative judicial region.  Castillo, No. 

08-97-00479-CR, 1998 WL 197656, at
*2; see Woodard, 991 S.W.2d at 796. 
In its opinion, the Woodard Court states, A[a]
court of appeals should not grant mandamus relief to the complaining party on a
recusal motion under Tex.R.Civ.P. 18a because the party has an adequate remedy
at law by way of an appeal from the final judgment.@  Woodard, 991 S.W.2d at 796, citing
In re Union Pacific Resources Co., 969 S.W.2d 427 (Tex. 1998).








By its broad
spectrum, the Woodard decision is a singular authority to Texas courts
that in all criminal cases where a party has filed a procedurally sound motion
to recuse, but the trial judge refuses to comply with Rule 18a, courts of
appeal have no mandamus authority to order that trial judge to take action,
even though such action is mandatory under Rule 18a(c).  In making this determination, the Court
relied on In re Union Pacific Resources Co., in which the Texas Supreme
Court held that a court of appeals abused its discretion by issuing a writ of
mandamus when the complaining party had an adequate remedy by appeal upon
denial of the recusal motion.  See In
re Union Pacific Resources Co., 969 S.W.2d at 429.  In In re Union Pacific Resources Co.,
the complaining party sought mandamus relief from a presiding judge=s denial of the motion to recuse
following a rehearing.  Id. at
428.  Under the facts of that case, the
trial judge had properly referred the party=s
motion to the presiding judge for the administrative judicial district for
disposition.  Id. at 427-28.  In its opinion, the Supreme Court noted that
its Rules of Civil Procedure, citing to Rule 18a(f), expressly provide for
appellate review from a final judgment after denial of a recusal motion.  Id. at 428.  








Unlike the
complaining party in In re Union Pacific Resources Co., the Relators in the
present cases, like the complaining party in Woodard, did not have their
recusal motions properly Adenied@ after a hearing before an assigned
judge.  The language of Rule 18a(f)
suggests to this Court that the rule addresses those instances where a recusal
motion was properly denied, but does not expressly provide an adequate remedy
where a criminal trial judge takes no action or inappropriate action on a
recusal motion that is in procedural compliance or denies that motion
essentially on its merits without referral or even a hearing.[4]  The San Antonio Court of Appeals discussed
this distinction in its opinion in In re Flores, 53 S.W.3d 428
(Tex.App.--San Antonio 2001, orig. proceeding). 
In its review of In re Union Pacific Resources Co., the Court
noted that In re Union Pacific Resources Co. involved a denial of a
motion to recuse, rather than a complaint for failure to comply with Rule
18a(c).  In re Flores, 53 S.W.3d
at 430.  Based in part on this reasoning,
the Court determined that it had mandamus authority.  See id. at 430; see also Viggiano
v. The Hon. Don R. Emerson, No. 07-95-0222-CV (Tex.App.--Amarillo Jan. 21,
1997, orig. proceeding)(not designated for publication) 1997 WL 20871 (finding
no remedy by appeal under circumstances where trial judge failed to either
refer or recuse, such that the motion could neither be granted nor denied).  The differences between the facts of In re
Union Pacific Resources Co., a case involving a clear denial of a motion to
recuse by the assigned judge, compared to the situation in which Relators find
themselves, suggest to this Court that the Woodard decision interpreted In
re Union Pacific Resources Co. much more broadly than was warranted in that
case and creates a bewildering effect. 
Without at least a ruling by some other judge, the trial court=s inaction or improper denial of the
recusal motion inexcusably undermines the purpose of Rule 18a(c), to provide a
neutral, disinterested proceeding for adjudication of the alleged grounds for
recusal and the opportunity to establish a complete record for appeal if that
motion is subsequently denied.








Moreover, we fail
to see how Relators Chavez and De Leon will have an adequate remedy at
law in their cases under the circumstances. 
As Justice Overstreet noted in his dissent in Woodard, A[r]equiring a defendant to go to trial
without having his recusal motion ruled upon in compliance with Rule 18a is
patently unfair, as well as inefficient and wasteful of judicial
resources.  . . .  Sometimes a remedy at law that exists may
nevertheless be so uncertain, tedious, burdensome, slow, inconvenient,
inappropriate, or ineffective as to be deemed inadequate.@ 
Woodard, 991 S.W.2d at 797 (Overstreet, J., dissenting).  We add that such circumstances will also
needlessly burden our state prosecutorial resources and will cause defendants
and crime victims to endure yet another trip through the criminal justice
system, which all parties could have avoided through the availability of
appropriate mandamus relief.  And then
there is a fundamental public interest of confidence in the administration of
justice so that in the words of Lord Hewart: 
Ajustice
should not only be done, but should manifestly and undoubtedly be seen to be
done.@  R. v. Sussex Justices, Ex parte McCarthy (1924)
1 KB 256, 259, All ER Rep 233,  234.

In this case,
Judge Cardone conducted a hearing on an identical recusal motion and found that
grounds existed to justify Judge Aguilar=s
recusal based on his alleged bias against Mr. Abraham and Ms. Smith--the
same exact grounds alleged in Relators=
motions to recuse.  The Estrada
motion was filed contemporaneously to those in Relators=
causes.  In her Estrada ruling,
Judge Cardone implicitly found the same bias alleged by Relators.  Given the proximity of events, it is doubtful
that the alleged bias against the real parties in interest had faded.  At oral argument, the parties in effect
conceded that any alleged bias would have persisted in such a short time
frame.  If Relators had been given a
hearing on their recusal motions as required under Rule 18a, they would have
had an opportunity to submit the Estrada ruling as evidentiary grounds
for collateral estoppel.  Through his
actions, Judge Aguilar has effectively limited Relators=
ability to obtain a fair hearing and their ability to effectively utilize the
appellate process based on a complete evidentiary record on the matter. 








In the present
cases, Judge Aguilar clearly violated a ministerial duty by failing to either
recuse himself or refer the procedurally sound recusal motions to the presiding
judge for disposition, acting instead in direct contravention of Rule
18a(c).  Despite our reservations as to
the adequacy of a remedy of appeal under the circumstances, we are bound to
follow the precedent set forth in Woodard and find that we have no
mandamus authority to address a trial judge=s
abusive noncompliance with Rule 18a upon the filing of non-defective motions to
recuse.

Therefore, we deny
mandamus relief in each cause.

 

 

August
12, 2003

DAVID WELLINGTON
CHEW, Justice

 

En Banc

Barajas, C.J., Larsen, McClure, and Chew, JJ.

Barajas, C.J., Concurring

Larsen, J., Dissenting

 

(Publish)

 

 

 

C
O N C U R R I N G   O P I N I O N

 

I concur in the
result reached by the majority in that this Court is duty-bound to follow
established caselaw, as formulated by the Texas Court of Criminal Appeals.  I would join in reluctantly denying mandamus
relief for that reason alone.








I, nonetheless,
must take the extraordinary step of echoing Justice Larsen=s position that the Texas Court of
Criminal Appeals should revisit Woodard v. The Eighth Court of Appeals,
991 S.W.2d 795 (Tex.Crim.App. 1998).  I
would strongly concur in Justice Larsen=s
statement that forcing a criminal defendant to trial before appellate relief
can be obtained on a trial court=s
failure to perform an otherwise ministerial duty is unfair, totally
inefficient, and a waste of judicial resources, especially in light of the
draconian budget cuts that the Texas judicial system was forced to
undergo.  Moreover, forcing a trial under
such circumstances, when a matter can easily be resolved through mandamus,
places an undue burden on the prosecution to reassemble witnesses for a
re-trial years later, an undue burden on local government who bear the cost of
assembling juries and associated costs of trial, and more important, on the
often neglected victim of crime who may be needlessly re-victimized all because
a trial judge refused to perform a ministerial act.  I would respectfully request that the Texas
Court of Criminal Appeals revisit Woodard.

 

 

 

August
12, 2003

RICHARD BARAJAS,
Chief Justice

 

 

 

 

D I S S E N T I
N G   O P I N I O N

 

I respectfully
dissent.  Although I realize the majority
feels constrained to follow the Court of Criminal Appeals opinion in Woodard
v. The Eighth Court of Appeals, 991 S.W.2d 795 (Tex.Crim.App. 1998), it is
my view that the facts in these cases are distinguishable.  Moreover, I am compelled to voice my
conclusion that Woodard is simply wrong, and I write to urge that the
Court of Criminal Appeals revisit it.  I
write briefly to explain my thinking.








First, I believe
the facts here beg for immediate remedy. 
Three identical recusal motions were filed by Mr. Abraham and Ms.
Smith.  Judge Cardone, assigned to hear
the first motion, has already found that grounds exist to justify recusal.  She granted the motion on June 2, 2003.  The respondent judge then obtained an
attorney ad litem.  The ad litem
immediately filed, on the challenged judge=s
behalf, motions to strike or quash the two remaining recusal motions.  The respondent judge then granted his own
motion in the face of the existing recusal order based on the same
facts.  His grounds for doing so were not
objectively verifiable, but rather that the motions were Afacially insufficient and not prima
facie adequated [sic].@  

Another remarkable
fact in these cases is the appointment of two attorneys ad litem to represent
the respondent judge (one attorney at the trial level, a second appellate
specialist for appearance before this Court; both appointed by the local
presiding judge and presumably to be paid from the county coffers).  This Court has found no authority for such
appointments; to the contrary, the case law indicates that for a judge to
advocate a position in the recusal proceeding at all may itself be grounds for
disqualification.  Blanchard v.
Krueger, 916 S.W.2d 15, 19 (Tex.App.--Houston [1st Dist.] 1995, original
proceeding).  In my opinion, the
respondent judge has now injected himself in the proceedings to such an extent
that he cannot maintain the appearance of neutrality in these cases.  I believe these facts are more extreme than
those presented in Woodard and therefore distinguishable.  I would conditionally grant mandamus.








Moreover, for the
reasons outlined by Justice Overstreet in his dissent to that case, I think Woodard
was wrongly decided.[1]  Forcing a criminal defendant to trial before
he can receive appellate relief on the trial court=s
failure to perform a ministerial duty is unfair, inefficient, and wasteful of
judicial resources.  See Woodard,
991 S.W.2d at 797 (Overstreet, J. dissenting). 
An appeal is not an adequate remedy when the trial has been conducted by
a trial judge tainted by motions to recuse which he has denied, particularly
where an identical motion has been granted by an impartial assigned judge, and
where the trial judge has obtained counsel to resist the recusal motions.

For these reasons,
I would conditionally grant mandamus.

 

 

 

August
12, 2003

SUSAN LARSEN,
Justice











[1]
The two petitions for writs of mandamus or prohibition involve the same
respondent and real parties in interest. 
The petitions were argued together and will be disposed of in two
identical opinions. 





[2]
Rule 18b(2) provides the various grounds for recusal, which include requiring a
judge to recuse himself in any proceeding in which (a) his impartiality might
reasonably be questioned, and (b) he has a personal bias or prejudice
concerning the subject matter or a party, or personal knowledge of disputed
evidentiary facts concerning the proceeding. 
Tex.R.Civ.P. 18b(2)(a),
(b).





[3]
Case law in civil cases is starkly different. 
When a recusal motion is filed, the trial judge has but two options:
recusal or referral of the case to the presiding judge for disposition.  See Johnson v. Pumjani, 56
S.W.3d 670, 672 (Tex.App.--Houston [14th Dist.] 2001, no pet.); In re
Presley, No. 05‑00‑00793‑CV (Tex.App.--Dallas May 23,
2000, orig. proceeding)(not designated for publication) 2000 WL 688239, at *1
(Upon notice of the filing of a motion to recuse, a trial judge must promptly
either voluntarily recuse himself or refer the motion to the presiding judge of
the administrative judicial district for action).  This is so regardless of the timeliness of
the motion or the sufficiency of the grounds for recusal.  Jamilah v. Bass, 862 S.W.2d 201, 203
(Tex.App.--Houston [14th Dist.] 1993, orig. proceeding).  Though the motion may ultimately fail, that
decision is made by a different judge, thereby avoiding even the appearance of
impropriety.  Johnson, 56 S.W.3d
at 672.





[4]
In his concurring opinion in In re Union Pacific Resources Co., Justice
Hecht states that he does not read the Court=s
opinion in that case to preclude mandamus relief for extraordinary cases
concerning a denial of a motion to recuse. 
Justice Hecht remarked that A[t]he
rule that appeal affords an adequate remedy for an erroneous denial of a motion
to recuse cannot be without exceptions. 
In other contexts we have noted that mandamus may be appropriate when a
judge has flagrantly refused to follow procedural rules . . . or when the ruling
is almost certain to require a reversal of the final judgment on appeal . . . .@ 
In re Union Pacific Resources Co., 969 S.W.2d at 429 (Hecht, J.,
concurring).





[1]
Curiously, Woodard is a per curiam opinion with a dissent.