# NO. 12-10-00109-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *STANLEY RENARD TILLEY, SR.,* *APPELLANT* | § | *APPEAL FROM THE SECOND* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *CHEROKEE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

A jury convicted Appellant, Stanley Renard Tilley, Sr., of capital murder. The State did not seek the death penalty, and the trial court sentenced Appellant to life in prison. Appellant raises six issues on appeal. He contends that the State's only witness to the murder was an accomplice whose testimony was uncorroborated. Therefore, he maintains that the trial court erred in overruling his motion for directed verdict and in failing to include in the court's charge an instruction regarding accomplice testimony. Appellant also challenges the sufficiency of the evidence, and he insists the trial court erred in failing to set a hearing on his motion for new trial. We affirm.

## BACKGROUND

Lester Anderson testified that he, Appellant, known also as "Frog," and Tolliver Thirkill, known as "Bay-Bay," met in a South Tyler ice cream parlor to plan a drug deal. Thirkill was to bring $24,000.00 in exchange for a kilo of cocaine, which Appellant was to supply. Appellant arrived at the meeting in a green vehicle and got into the back seat of Lester Anderson's black Tahoe. Thirkill rode in the front passenger seat, and Anderson sat behind the steering wheel. Appellant asked Thirkill if he had the money. Thirkill "pulled the money and showed a portion

of the money" to Appellant. After an apparent signal from a person in the green car, Appellant said, "Let's go back towards Jacksonville." Anderson started driving following Appellant's instructions. After they had crossed the Cherokee County line but before reaching Jacksonville, Appellant directed Anderson to turn right onto a county road in a thinly settled area where Appellant's parents lived.

After they passed Appellant's parents' house, Appellant drew a gun, pointed it at Thirkill, and told him to put his hands on the dashboard. Thirkill tried to hand the money to Appellant. At this point, Anderson had slowed to stop at a "T" in the road and asked Appellant which way to turn. Appellant said, "Take a right." Anderson turned right but apparently proceeded slowly, starting and almost stopping. Appellant told Thirkill, "If you open that door, I'm going to kill you." Appellant then fired twice. The first shot hit Thirkill while he was still partially in the front seat. The second shot hit Thirkill as he was falling out of the car onto the roadside. Appellant had also left the car. Seeing that both Thirkill and Appellant were out or nearly out of his vehicle, Anderson sped away leaving Appellant and Thirkill's body on the roadside.

Appellant immediately fired "like six or seven times" at Anderson in the fleeing black Tahoe. Three bullets hit the Tahoe but missed Anderson. Almost immediately, Anderson saw that he was being pursued by the green car that had brought Appellant to the meeting in Tyler. A high speed chase ensued with perhaps several more shots fired at Anderson from the green car. Several witnesses testified that they had seen the Tahoe pursued at a dangerous speed by the green car, very similar in appearance to the car owned by Appellant's girlfriend. Sometime after they reached Highway 175, Anderson lost the green car and went to his parents' house in Neches. He answered Thirkill's cell phone, talked to Trotter, his daughter's fiancé, and told him what had happened. Anderson's daughter, Trotter, and Henry Thirkill came to the Anderson place in Neches. They then drove to Jacksonville and contacted the police. Anderson gave a statement to the investigator.

Thirkill's body was found by a nearby resident at dusk beside the road. One bullet penetrated Thirkill's left lung and the right side of his heart. The second shot went through the liver, colon, the heart sac, and the arch of the aorta. Both wounds were lethal.

One of the nearby residents testified to hearing two shots, then a succession of rapidly fired shots. Almost immediately, he saw a speeding black Tahoe chased by a green car. Other

motorists witnessed parts of the chase described by Anderson.

The Winnsboro police arrested Appellant approximately six months after the murder where he was staying with his girlfriend, Miranda Collins. A witness identified the car as the one occupied by Appellant and Collins on the day of the murder. The evidence strongly suggests that this was the same green sedan used to pursue Anderson after the murder.

## INTRODUCTION OF ACCOMPLICE WITNESS TESTIMONY

In his first issue, Appellant complains that the trial court erred in overruling his objection to Lester Anderson's testimony. He argues Anderson was an accomplice witness for whose testimony, up to that point in the trial, there had been no corroboration.

An appellate court reviews a trial court's ruling excluding or admitting evidence for abuse of discretion. *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). A trial court does not abuse its discretion as long as its decision to admit or exclude evidence is within the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

The accomplice witness rule upon which Appellant relies is set out in Article 38.14 of the Texas Code of Criminal Procedure.

> A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005). This is a rule of evidence sufficiency and does not limit the admissibility of an accomplice's testimony. *Haines v. State*, 134 Tex. Crim. 524, 526, 116 S.W.2d 399, 400 (1938); *Johnson v. State*, 969 SW.2d 134, 134-35 (Tex. App.–Texarkana 1998, pet. ref'd). The admissibility of accomplice testimony is not dependent upon corroborating evidence, and there is no requirement that the corroborating evidence be introduced before the testimony of the accomplice. *See Joines v. State*, 482 S.W.2d 205, 208 (Tex. Crim. App. 1972).

Appellant interprets the accomplice witness rule to require the introduction of corroborating evidence before the accomplice witness may testify. There is no such requirement.

3

*Id.* Appellant's first issue is overruled.

### ACCOMPLICE WITNESS

In his second issue, Appellant contends the trial court erred in overruling his motion for directed verdict at the close of the State's case because Lester Anderson was an accomplice witness and his testimony was uncorroborated. Appellant points out that no physical evidence connects him to the offense: "no gun, no drugs, no money, no fingerprints, no DNA." He argues that after the shooter pulled out the gun with the apparent intention to rob Thirkill, the black Tahoe in which they were riding reached a "T" intersection. Anderson asked the shooter which way to turn. When the shooter said "turn right," Anderson complied. Anderson had hardly completed the turn when seconds later Thirkill was murdered. In Appellant's view, this is sufficient to establish Anderson's complicity in Thirkill's murder and his role as an accomplice.

In his third issue, Appellant claims the trial court erred in failing to include in the charge an instruction regarding accomplice testimony.

### Applicable Law

An accomplice witness is a state's witness that the evidence shows could be prosecuted for the same offense as the accused or for a lesser included offense of that offense. ***Zepeda v. State***, 819 S.W.2d 875, 876 (Tex. Crim. App. 1991). Whether the accomplice witness is actually charged or prosecuted is irrelevant. ***Cocke v. State***, 201 S.W.3d 744, 748 (Tex. Crim. App. 2006).

"The definition of an accomplice witness now incorporates Sections 7.01 and 7.02 of the Penal Code, which define the "parties" that are subject to conviction for an offense. 43 George E. Dix, Robert O. Dawson, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 31.261 (2d ed. 2001). The provisions pertinent to the issues raised in this case are as follows:

> (a) A person is criminally responsible for an offense committed by the conduct of another if:
> . . . .
> (2) acting with intent to promote or assist the commission of the offense, he solicits encourages, directs, aids, or attempts to aid the other person to commit the offense; . . .
> . . . .
> (b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though

having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

TEX. PENAL CODE ANN. § 7.02 (Vernon 2003). To be an accomplice, an individual must, before or during the commission of the crime, and with the required mental state, participate with the defendant by "an affirmative act that promoted the commission of *the [same] offense with which the defendant is charged.*" *Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004) (emphasis added). There must be sufficient evidence connecting the person to the criminal offense to render them a "blameworthy participant." *Blake v. State*, 971 S.W.2d 451, 455 (Tex. Crim. App. 1998). The witness's complicity in other crimes committed by the accused does not make him an accomplice witness. *Crank v. State*, 761 S.W.2d 328, 349 (Tex. Crim. App. 1988). A person merely present at the scene of the offense is not an accomplice. *Blake*, 971 S.W.2d at 454. "[O]ne is not an accomplice for knowing about a crime and failing to disclose it, or even concealing it." *Id.*

In *Kunkle v. State*, 771 S.W.2d 435 (Tex. Crim. App. 1986), the witness, Sauls, heard the group discussing robbing someone with a .22 caliber pistol they had. He did not participate in the discussion. However, he remained with the group. He also asked how much money had been taken in the first robbery. He did not participate in the second robbery that culminated in the murder of the victim. When he complained that they did not have to kill Horton, the victim, one of the killers threatened to shoot Sauls. Sauls rejoined the group the next day at Canyon Lake although the proceeds of the robbery-murder were used to pay for the outing. The evidence showed that he did not anticipate the murder would occur, he did nothing to assist the commission of the offense, and when he attempted to voice his objection to the murder, he was silenced by the others. Without evidence of an affirmative act by the witness to assist the commission of the crime, the court held that there was not even a fact issue raised as to whether the witness was an accomplice. *Id.* at 438-39.

In *Gamez v. State*, 737 S.W.2d 315 (Tex. Crim. App. 1987), the facts showed that the witness had not participated in the planning and execution of the murder of the victim by shooting him with a gun as charged in the indictment. *Id.* at 323. The court held the witness was not an accomplice although the witness had participated in a previous attempt to kill the victim with a bomb. *Id.*

5

Evidence that the witness was involved in drug use and "other conspiracies" with the defendant did not make him an accomplice to the charged murder in *Jackson v. State*, 933 S.W.2d 696, 698 (Tex. App.–San Antonio 1996, pet. ref'd).

If the evidence clearly shows that the witness has been or could have been indicted for the same crime with which the defendant is charged or a lesser included offense, then the witness is an accomplice as a matter of law and the court is under a duty to so instruct the jury. *Cocke*, 201 S.W.3d at 748. If the evidence presented by the parties is conflicting or unclear, the trial court should submit the question of whether an inculpatory witness is an accomplice witness as a matter of fact to the jury with instructions defining the term accomplice. *Paredes*, 129 S.W.3d at 536. "The trial court is not required to give the jury an accomplice-witness instruction when the evidence is clear that the witness is neither an accomplice as a matter of law nor as a matter of fact." *Cocke*, 201 S.W.3d at 748.

**Discussion**

In the instant case, Lester Anderson helped arrange a drug deal between Appellant and the deceased. There is no evidence that he even anticipated the robbery and murder of Thirkill by Appellant. Seconds before the murder, Anderson turned right as directed by Appellant. Appellant insists this is an affirmative act assisting the commission of the charged murder. We disagree.

Anderson's following the instructions of the armed Appellant does not demonstrate Anderson's complicity in the crime with which Appellant was charged. That did nothing to assist the commission of the murder. Seconds after turning right as Appellant instructed, Anderson was fleeing for his life from Appellant, dodging bullets in a high speed chase. The evidence shows that Anderson was surprised and scared when Appellant drew his pistol. When the shooting started, Anderson fled as soon as he could, which was almost instantaneously.

Lester Anderson was not an accomplice in Thirkill's murder nor does the evidence raise a fact question as to his complicity. His testimony required no corroboration. Therefore, the trial court did not err in denying Appellant's motion for directed verdict based upon the lack of corroboration for Anderson's testimony. The trial court did not err in refusing to instruct the jury that Anderson was an accomplice witness as a matter of law, or in refusing to submit to the jury the question of whether Anderson was an accomplice witness as a matter of fact. Appellant's

6

second and third issues are overruled.

## SUFFICIENCY OF THE EVIDENCE

In his fourth and fifth issues, Appellant maintains the evidence is insufficient to support his conviction.

### Standard of Review

In reviewing the sufficiency of the evidence, the appellate court must determine whether, considering all the evidence in the light most favorable to the verdict, the jury was rationally justified in finding guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Considering the evidence "in the light most favorable to the verdict" under this standard requires the reviewing court to defer to the jury's credibility and weight determinations, because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Brooks*, 323 S.W.3d at 899. "A court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not appear affirmatively in the record–that the trier of facts resolved any such conflicts in favor of the prosecution. . . ." *Jackson*, 449 U.S. at 326, 99 S. Ct. at 2793.

### Discussion

Appellant stresses that only Anderson's uncorroborated testimony connects Appellant with the crime. And, he argues, "no reasonable juror could have believed [Anderson's] testimony based upon the considerable evidence that contradicted [him]."

Appellant exaggerates the importance of the conflicts in the evidence. We have examined the examples cited by Appellant and find that some are explained elsewhere in the evidence. Others are easily explained as the ordinary differences between separate narratives of an exciting event. Taken together they are not sufficient to undermine Anderson's credibility. The resolution of conflicts in the evidence is for the jury. Anderson was not an accomplice, and his uncorroborated testimony is sufficient to sustain Appellant's conviction. Appellant's fourth and fifth issues re overruled.


## HEARING ON MOTION FOR NEW TRIAL

In his sixth issue, Appellant maintains that the trial court abused its discretion in failing to

set a hearing on his motion for new trial.

## Standard of Review

The trial court's denial of a motion for new trial is reviewed for abuse of discretion. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).

A defendant must be granted a new trial when a material witness has been kept from court by force, threats, or fraud. TEX. R. APP. P. 21.3(e). "The 'fraud' provision of this rule contemplates at least two actors–the material witness and one or more persons who keep that witness from court by fraud." *Rodriguez v. State*, 21 S.W.3d 562, 567 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). The defendant must show the acts or omissions that prevented the missing witness from appearing in court. *Id*.

A hearing on a motion for new trial is not required if the matters raised in the motion may be determined from the record. *Reyes v. State*, 849 S.W. 812, 816 (Tex. Crim. App. 1993). When an accused presents a motion for new trial raising matters not determinable from the record and which could entitle him to relief, the trial judge abuses his discretion in failing to hold an evidentiary hearing. *Id*. However, the motion must be supported by affidavit specifically showing the truth of the grounds of attack. *King v. State*, 29 S.W.3d 556, 569 (Tex. Crim. App. 2000).

In order to obtain a new trial based on newly discovered evidence, the defendant must show that (1) the newly discovered evidence existed and was unknown to the defendant at the time of trial; (2) the failure to discover the evidence was not due to defendant's want of diligence; (3) the evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the evidence is probably true and so material that it probably would produce a different result if a new trial were granted. *Wallace v. State*, 106 S.W.3d 103, 106 (Tex. Crim. App. 2003).

Only two of the grounds urged in Appellant's motion for new trial raise matters not determinable from the record. The other grounds raised by Appellant involve questions of law previously considered by the trial court.

## Absence of Material Witness

Appellant's ninth ground for new trial alleges a material witness was prevented from attending the trial by force, threat, or fraud. In his affidavit, Appellant's counsel alleges that he

8

spoke with Leeza Gipson who told him that Appellant was at her home for a period of time that made it impossible for him to have murdered Thirkill. Later, she "equivocated on her prior statements." Counsel also received a telephone call from an unnamed person who at one time had worked at the Anderson County jail. She claimed to be a relative of Leeza, and she was "adamant . . . that she did not want Leeza involved in the subject case and that she should not be made to testify." When Appellant's investigator attempted to serve Leeza with a subpoena, he was told that the witness had gone to Arizona with her mother. Leeza has since declined to speak to Appellant's counsel.

A statement by a relative that she did not want Leeza Gipson to testify, together with Leeza's apparent absence from the state, are not facts constituting force, threats, or fraud. The affidavit of Appellant's counsel does not present facts that would entitle him to an evidentiary hearing on his motion for new trial on this ground.

## New Evidence

Appellant's counsel, in his affidavit, recounts a conversation with another of his clients, Tyler, who told him that he had heard Anderson say that he, not Appellant, killed Thirkill. The affidavit also states that Tyler "may have at other times made contrary statements." Appellant's motion and affidavit fail to allege that Appellant's failure to discover this evidence was not due to his want of diligence. The affidavit also relates that the State informed counsel that, before trial, it had intercepted a letter from Appellant to Tyler encouraging him to impeach Anderson.

Counsel's affidavit leaves room to doubt that Tyler would actually testify in the way he indicated in his conversation with counsel. There is no affidavit from Tyler. Given its source and otherwise suspect nature, it is difficult to view the testimony Tyler might give "as probably true and likely to change the result" in a new trial. Appellant's motion and affidavit do not allege or show the requisites that would entitle Appellant to an evidentiary hearing on the ground of newly discovered evidence.

The trial court did not abuse its discretion in denying Appellant a hearing on his motion for new trial. Appellant's sixth issue is overruled.

### DISPOSITION

The judgment of the trial court is ***affirmed***.

9

**BILL BASS**

Justice

Opinion delivered April 29, 2011.

*Panel consisted of Worthen, C. J., Hoyle, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*

(DO NOT PUBLISH)